Stearns *v.* Marsh.

---

STEARNS and another *vs.* MARSH and another.

The delivery of personal property by a debtor to his creditor as collateral security for the debt, is a *pledge* of such property.

A creditor having personal property pledged to him by his debtor, as security for the debt, cannot sell the same until he has first called upon the debtor to redeem the pledge; and he must also give him notice of the time and place of sale.

The rule, in this respect, is the same, whether the pledge was made to secure a debt payable presently, or one payable at a future day.

The holder of the pledge may, at his election, file a bill of foreclosure, or sell upon notice, after having made a personal demand of the pledgor to redeem. *Per* JEWETT, J.

If the pledgor cannot be found so as to have a personal demand made of him, the pledgee *must* resort to his bill. *Per* JEWETT, J.

If the pledgee sell the property without calling on the pledgor to redeem, the latter may maintain an action for the money without paying or tendering the debt; but in such an action the pledgee may *recoup* the amount of the debt. *Per* JEWETT, J.

In such a case, the pledgor may bring trover or assumpsit at his election. *Per* JEWETT, J.

And where the defendant gave his note to the plaintiff at four months for a precedent debt, and at the same time delivered to him certain merchandize as collateral security for the debt, which the plaintiff, after the note fell due, sold at auction, for less than its value, without notice to the defendant, and without calling upon him to redeem, and then sued the defendant for the balance of the note; *held* that the defendant was entitled to have the full value of the merchandize, and not merely the proceeds of the sale, applied to the payment of the note.

And where, in such a case, it appeared that the value of the property was equal to the amount of the note, *held* that the defence was admissible under the plea of *non-assumpsit.*

ASSUMPSIT by the payees against the makers of a promissory note. Plea, *non-assumpsit.* The cause was tried at the Niagara circuit, in October, 1845, before DAYTON, C. Judge

The note was dated July 5th, 1837, and was for the sum of $436,54, payable in four months from date. The defendants resided at Haverhill, Mass.; and the plaintiffs at Boston. It appeared that the note, at its date, was sent to the plaintiffs in a letter, from the defendants, in which they stated that they had on that day forwarded to the plaintiffs, by team, ten cases, numbered 1 to 10, of boots and shoes, of the value, according to an invoice contained in the letter, of $520,32, " as collateral security" for the note. They added, " We hope that now every thing will be satisfactory; and should you find a purchaser for the shoes in season to meet your demand, we should be glad to have them sold." On the 17th of the same month, the de fendants wrote to the plaintiffs, that they had learned that there was to be a public sale of boots and shoes at O. Rich's, Broad-street, on the 19th instant, and added: " If you please, vou may put in three of the cases of the boots we sent you, 'Nos. 5, 6 and 7,) and take the proceeds. Please send us the account of sales, and endorse the proceeds on your note." On the 2d day of November following, the plaintiffs caused a no- tice of a sale of " a large and general assortment of boots and shoes" to be inserted in an advertisement of O. Rich, the au k- tioneer; the sale to be on the 15th day of that month, at the auctioneer's office. Other articles were included in the adver- tisement, and the boots and shoes were not otherwise described or referred to than as above stated. The advertisement was published in a daily paper, printed in Boston, from the day last mentioned until the day of sale. The plaintiffs sent the cases to the auctioneer, and they were sold, pursuant to the notice, and produced $166,97 besides charges, which amount was en- dorsed on the note. It was shown that the note was given, and the boots and shoes sent to the plaintiffs, in consequence of their demanding security for a debt against the defendants, of the amount mentioned in the note. It was proved that the boots and shoes were worth the amount mentioned in the in- voice—$520,32.

The defendants' counsel requested the judge to charge that the plaintiffs had no right to dispose of the property without

first giving the defendants notice to redeem it; and that having done so, they were accountable fo: its value; and that if such value was equal to the money due on the note, that it was extinguished; and if more, that they were entitled to have the balance certified in their favor. They also insisted that the notice of sale was insufficient; that it was prematurely given— the note not having fallen due when it was first published—and that it did not sufficiently describe the property or state the occasion of the sale. The judge declined to charge as requested, but instructed the jury that the plaintiffs were entitled to a verdict for the balance of principal and interest due on the note, crediting the endorsement. The defendants' counsel excepted, and the jury found a verdict according to the instruction. The defendants move for a new trial on a bill of exceptions.

*E. J. Chase,* for the defendants.

*A. Holmes,* for the plaintiffs.

*By the Court,* JEWETT, J. The contract between these parties was strictly a pledge of the boots and shoes. At common law, a pledge is defined to be a bailment of personal property, as a security for some debt or engagement. (2 *Kent's Com.* 577, 5*th ed.; Story on Bailment,* § 286.) The plaintiffs' debt, thus secured, became payable on the 8th day of November, 1837. On the 15th of that month, the plaintiffs caused the pledge to be sold at a public sale by an auctioneer in Boston, pursuant to a public notice published in certain newspapers in that city from the 2d to the 15th of November inclusive; but no notice of sale, or to redeem, was at any time given to the defendants. The net proceeds of the sale was $166,97, which the plaintiffs applied on their debt without the assent of the defendants.

The first question made on the argument is, whether the sale thus made was authorized, and bound the defendants. On the part of the plaintiffs it was insisted, that the pledge

having been made as a security for their debt, which was payable at a future day, the plaintiffs had a right, after a default in payment, to sell the pledge, fairly in the usual course of business; without calling on the defendants to redeem, or giving them notice of the intended sale: and that such sale concluded the defendants. It is said that the law makes a distinction between the case of a pledge for a debt payable immediately, and one where the debt does not become payable until a future day; and that in the latter case the creditor is not bound to call for a redemption or to give notice of sale, though in the former it is conceded that there must be such demand and that notice must be given. Non-payment of the debt at the stipulated time did not work a forfeiture of the pledge, either by the civil or at the common law. It simply clothed the pledgee with authority to sell the pledge and reimburse himself for his debt, interest and expenses; and the residue of the proceeds of the sale then belonged to the pledgor. The old rule, existing in the time of Glanville, required a judicial sentence to warrant a sale, unless there was a special agreement to the contrary. But as the law now is, the pledgee may file a bill in chancery for a foreclosure and proceed to a judicial sale; or he may sell without judicial process, upon giving reasonable notice to the pledgor to redeem, and of the intended sale. I find no authority countenancing the distinction contended for; but on the contrary, I understand the doctrine to be well settled, that whether the debt be due presently or upon time, the rights of the parties to the pledge are such as have been stated. (*Cortelyou* v. *Lansing*, 2 *Caines' Cas. in Err.* 204; 2 *Kent's Com.* 5th ed. 581, 582; 4 *id.* 138, 139; *Tucker* v. *Wilson*, 1 *P. Wms.* 261; *Lockwood* v. *Ewer*, 2 *Atk.* 303; *Johnson* v. *Varnon*, 1 *Bailey's S. C. Rep.* 527; *Perry* v. *Craig*, 3 *Missouri Rep.* 516; *Parker* v. *Brancker*, 22 *Pick.* 40; *De Lisle* v. *Priestman*, 1 *Browne's Penn. R.* 176; *Story's Com. on Eq.* § 1008; *Story on Bailm.* §§ 309, 310, 346; *Hart* v. *Ten Eyck*, 2 *John. Ch.* 100; *Patchin* v. *Pierce*, 12 *Wend.* 61; *Garlick* v. *James*, 12 *John.* 146.) Nor do I see any reason for such a distinction. In either case the right to redeem equally exists until a sale:

the pledgor is equally interested, to see to it that the pledge is sold for a fair price. The time when the sale may take place is as uncertain in the one case as in the other; both depend upon the will of the pledgee, after the lapse of the term of credit in the one case, and after a *reasonable* time in the other; unless indeed the pledgor resorts to a court of equity to quicken a sale. Personal notice to the pledgor to redeem, and of the intended sale, must be given as well in the one case as in the other, in order to authorize a sale by the act of the party. And if the pledgor cannot be found and notice cannot be given to him, judicial proceedings to authorize a sale must be resorted to. (2 *Stor. Com. on Eq.* § 1008.) Before giving such notice, the pledgee has no right to sell the pledge; and if he do, the pledgor may recover the value of it from him, without tendering the debt; because by the wrongful sale the pledgee has incapacitated himself to perform his part of the contract, that is, to return the pledge, and it would therefore be nugatory to make the tender. (*Cortelyou* v *Lansing, supra; Story on Bailm.* 2d ed. 349; *McLean* v. *Walker*, 10 *John.* 472.)

The evidence in this case shows that the plaintiffs, in November, 1837, long prior to the commencement of this suit, tortiously sold the pledge, and thereby put it entirely beyond their power to return it, upon payment of the debt. Where a pledge is made by a debtor to his creditor to secure his debt, for a certain term, the law requires that the latter shall safely keep it without using it, so as to cause any detriment thereto; and if any detriment happens to it within the term appointed, it may be set off against the debt, according to the damage sustained. And if the pledge is made without mention of any particular term, the creditor may demand his debt at any time. When the debt is paid, the creditor is bound to restore the pledge in the condition he received it, or make satisfaction for any injury that it has received; for it is a rule, that a creditor is to restore the pledge or make satisfaction for it; if not, he is to lose his debt. (1 *Reeve's Hist. Eng. Law,* 161, 162.) If the pledgor, in consequence of any default of the pledgee, or of his conversion of the pledge, has by any action recovered the value of the

pledge, the debt in that case remains, and is recoverable, unless in such prior action it has been deducted. By the common law the pledgee, in such an action brought for the tort, has a right to have the amount of his debt *recouped* in the damages. (*Bac. Abr. Bailment, B. ; Jarvis* v. *Rogers,* 15 *Mass. R.* 389 ; *Story on Bailm. 2d ed.* §§ 315, 349.)

The plaintiffs were wrongdoers in selling the pledge at the time they did, without notice to redeem or of the sale being given to the defendants ; and it is shown that the value of the pledge at the time equalled, if it did not exceed the debt which it was made to secure.

The counsel for the defendants, in effect, offered to *recoup* their damages arising from the plaintiffs' breach of the contract of pledge, but was not permitted to do so. It is urged by the plaintiffs' counsel, that the defence was not admissible under the pleadings ; but I am satisfied that it was unnecessary to plead specially, or to give notice of the matters relied on. The evidence establishes that the plaintiffs had no cause of action, and the defence is fairly covered by the plea of *non-assumpsit.* (*Batterman* v. *Pierce,* 3 *Hill,* 171 ; *Barber* v. *Rose,* 5 *id.* 76 ; *Ives* v. *Van Epps,* 22 *Wend.* 155.)

The defendants clearly had an election of remedies against the plaintiffs for the conversion of the pledge. They could maintain trover or assumpsit, and in the latter action could recover the value under the common counts. (*Hill* v. *Perrott,* 3 *Taunt.* 274 ; *Butts* v. *Collins,* 13 *Wend.* 139 *to* 154.) If assumpsit was maintainable by them, they may, in an action by the plaintiffs, set off the value of the boots and shoes as for such property sold. There is no valid objection on the ground that the damages are unliquidated or uncertain. The case of *Butts* v. *Collins* is decisive on that point. There must be a new trial.

New trial granted.