## LEWIS *a.* GRAHAM.

*New-York Common Pleas; Special Term, January*, 1857.

Suit by Assignee.—Defect of Parties.—Rights of Pledgor and Pledgee.

An assignee of a demand in trust to pay certain creditors of the assignor and the balance to the assignor himself, may bring an action in his own name, without joining the *cestui que trusts* as plaintiffs.

An objection to a complaint for defect of parties can only be taken by demurrer or answer.

An agreement whereby the maker of notes delivers certificates of stock as collateral security for the payment of the notes, stipulating that if the notes are not paid at maturity the securities shall be under the control of the holder, who is authorized to dispose of them, and to apply the proceeds to the credit of the maker,—is a *pledge* of the stocks and not a *mortgage.*

A pledgee can sell the pledge on default of payment, only upon *demand,* of payment and *notice* of sale; and the notice must state the *time* and *place* of sale.

A special partner of a firm with whom property is pledged, is not incapacitated by his relations with the firm from purchasing the pledge at a sale made by them.

Where a pledgee has sold the pledge without right to do so, a tender of the debt is not necessary to enable the pledgee to recover the value of the pledge.

Action tried by the court.

This action was brought by James M. Lewis against John A. Graham and others.

*H. P. Fessenden* and *B. W. Bonney*, for plaintiff.

*Mott & Murray* and *S. A. Foote*, for defendants.

Ingraham, F. J.—The plaintiff has brought this action against the defendants, who are members of a limited partnership, to obtain an account; claiming a right to redeem certain securities left by Nathaniel J. Brown, the assignor of the plaintiff, with the defendants, to secure the payment of two notes of Brown, held by the defendants.

In August, 1844, the defendants were in partnership, Varnum being the special partner, and the other defendants general partners. At that time, one Brown of Illinois, for a good consider-

ation, gave to the defendants' firm his two promissory notes for $2,736.37, payable in twelve months after date.

Brown delivered at the same time, as collateral security for the said two notes, sundry certificates of Illinois State indebtedness, some drawing interest, and some without any interest specified therein, amounting to $8,500.

Afterwards, in 1846, Brown delivered to the defendants, as further security for the said notes, eight other certificates of Illinois indebtedness, each for $132.50, payable with interest at a future day.

The agreement under which these notes were given, with the securities, was in writing. By it Brown agreed that if the notes were not paid at the expiration of twelve months, the securities or collaterals were to be under the control of the defendants' firm, and said firm was authorized to dispose of and sell said securities after sixty days from the maturity of the notes, and apply the proceeds thereof to the credit of Brown.

The collaterals were to be sold at the highest market value in New-York; and the firm was only authorized to sell so much of the collaterals as would pay off and discharge the indebtedness of Brown. Brown's notes remained unpaid at maturity, excepting as to $200, which was paid on one of the notes when it fell due. The defendants' firm repeatedly demanded payment of Brown, prior to January 18, 1848, by letters through the mail, which were received by Brown, and on February 18, 1848, they sent Brown a letter, which was received by him in Illinois, demanding payment, and inclosing a notice that all the securities held by them as collateral, and delivered when the notes were passed to Brown, would be sold on February 21, to pay the indebtedness of Brown on his notes to them. This notice did not include the eight certificates delivered in 1846, as they were not mentioned therein. An answer was received to this letter, dated February 21, acknowledging that such letter came to hand that day, suggesting modes of settlement, and asking for a further delay of sixty days.

On February 21, the securities were all sold at auction, including those delivered in 1846, for a sum less than the amount due to the defendants, and were purchased by the special partner, Varnum, on his own account.

On February 22, 1848, the defendants wrote Brown a letter,

informing him of the sale, and inclosing an account showing a balance due from Brown of $1,261, the payment of which was claimed by them. In January, 1854, Brown offered to the defendant Varnum, in writing, to pay off the amount of the notes and interest, and demanded the delivery to him of the collaterals held by him, and credit for the money paid on them, which was refused.

On January 21, 1854, Brown assigned his claims to the plaintiff for all the securities so pledged by him, in trust, to collect the same, and out of the proceeds to pay the expenses and two and a half per cent. commissions; then to pay to Haynes and Hyer certain indebtedness of Brown to them; and, lastly, to pay over the proceeds to Brown or his legal representatives.

This action was commenced by the assignee on February 18, 1854.

An objection is taken by the defence that sufficient parties are not before the court, because the *cestui que trusts*, under the assignment of Brown, are not named as plaintiffs. Before the Code there was no necessity for joining them in such an action. The assignee had full power to collect such claims in his own name. By section 11 of the Code of Procedure every action is to be brought in the name of the real party in interest; but by section 113 an exception is made in favor of a trustee of an express trust, and in some other cases, in which an action may be maintained by the trustee without joining with him the persons for whose benefit the action is prosecuted.

The subsequent clause of 1851 was not intended to limit the meaning of the term trustee of an express trust to the case therein mentioned, but to extend it so that it should *include* a person with whom a contract is made for the benefit of another. I think there can be no doubt as to the right of the plaintiff to maintain the action in his own name, without joining *cestui que trusts* as parties.

Even if it were necessary, however, the defendants cannot now make the objection. By section 144, defect of parties may be objected to by the demurrer, and by section 147, by the answer in certain cases. If no such objection is taken either by demurrer or answer, the defendant is deemed to have waived the same. As no such objection is properly made in the answer, it cannot now be made available by the defendants.

The first question which arises in an examination of this case upon the merits is, whether the agreement by which these securities were placed in the defendants' possession is to be regarded as a mortgage, or merely pledging the property by way of security. The counsel claims that this agreement is, in fact, a mortgage, and that as such the holders had a right to sell the securities forthwith on forfeiture by non-payment.

The distinction stated in Brownell *v.* Hawkins (4 *Barb.*, 491) is urged in the defendants' favor. A mortgage is a sale of goods, with a condition that if the mortgagor pays, it shall be void. A pledge contains no words of sale, but an authority, if the debt is not paid, to sell the pledge for that purpose. In the one case, the title passes to the mortgagees; in the other, the title remains in the pledgor, although possession is given to the pledgee. Recognizing this distinction as correct, still there is nothing in this agreement that will warrant the conclusion that the assignor intended, at the time of execution, to convey to the defendants' firm his title to the property pledged. On the contrary, the whole tenor of the instrument shows, I think conclusively, that his intent was merely to pledge the property as security.

He says therein:—" As security for the payment of the notes, I have deposited with them the securities, &c." The defendants' control over the securities was only to be, in case of failure, to pay the notes for which they were pledged, and then they were only to be sold at the highest market price, and in any event the defendants could only sell enough of the securities to pay the debt of Brown. These provisions are entirely inconsistent with the requisites of a mortgage, in which it is necessary that the title should pass at the time of execution of the mortgage, and by which, if failure to pay at maturity happens, the right of redemption ceases, and the title becomes absolute, subject to relief in a court of equity (Brown *v.* Bement, 8 *Johns.*, 96; Ackley *v.* Finch, 7 *Cow.*, 299; Brownell *v.* Hawkins, 4 *Barb.*, 491).

The clause giving the defendants control of the property, after failure to pay, gives no other or further right than a pledgee has on failure of the pledgor to redeem the pledge. The pledgee has possession, and he thereby obtains the control of the property, so as to proceed according to law, and sell the pledge to obtain payment of the debt for which it was pledged.

But in case of an ordinary pledge, and in this case by express agreement, he can only sell enough to discharge the debt, and cannot claim a forfeiture of the whole property, as he could under a mortgage (Dykers v. Alstyn, 7 *Hill*, 497).

I have treated this question on the supposition that the distinction above stated in Brownell v. Hawkins was correct, although I am not prepared to adopt it as broadly as there stated; and the case of Wilson v. Little (2 *Comst.*, 443) shows that actual title to the pledged property is not always sufficient to make the instrument pledging it a mortgage. In that case the property (stock) was deposited as security for money loaned, with authority to sell on non-payment of the loan, and the stock was actually transferred to the pledgee. There the same grounds were urged as in this, that the instrument was a mortgage, and the property forfeited on non-payment; but the court held, notwithstanding the title had passed to the pledgee, that the instrument was not a mortgage, and that the property pledged could only be sold after demand of payment. (See 5 *Johns. R.*, 258; 10 *Ib.*, 471.)

The next question in this case is, what acts are required from the pledgee after failure to pay the debt, before he can sell the pledge for that purpose. The plaintiff contends that demand of payment from the debtor, and notice of the time and place of such sale, must be served before the sale can be legally made. That a demand of payment is necessary, is sustained by all the authorities (*Story on Bailm.*, 348, 310; Wilson v. Little, 2 *Comst.*, 443; Stearns v. Marsh, 4 *Den.*, 227). The necessity of such demand was conceded by the defendant's counsel upon the trial, and the counsel only differed upon the necessity of notice. In Stearns v. Marsh (4 *Den.*, 227), Mr. Justice Jewett says :—" As the law now is, the pledgee may file a bill in Chancery for a foreclosure, and proceed to a judicial sale, or he may sell without judicial process, upon giving reasonable notice to the pledgor to redeem, and of the intended sale." Again :—" Personal notice to the pledgor to redeem, and of the intended sale, must be given, in order to authorize a sale by the act of the party. Before giving such notice, the pledgee has no right to sell the pledge, and if he do, the pledgor may recover the value of it from him without tendering the debt."

The same rule is adopted in Brown v. Ward (9 *How. Pr. R.*,

497; 3 *Duer R.*, 660, 497); Mr. Justice Hoffman holding that a right to sell property that was pledged could only be exercised after the debt is due, upon a demand for payment and notice of the sale (2 *Kent's Com.*, 581; *Story on Bailm.*, 208; Patchin *v.* Pierce, 12 *Wend.*, 81; 4 *Kent's Com.*, 139).

I have not been able to find any case, and none was cited on the argument, distinctly holding that a demand of the money due, without notice of the time and place of sale, was sufficient to protect the pledgee in making the sale.

In the case of Wilson *v.* Little, *supra*, which was mainly relied on by the defendants' counsel, it is said that the pawnee cannot sell without a demand of payment previously.

But in that case it is nowhere said that a notice of the sale was not necessary; and in the contract on which that action was brought, notice of the sale was dispensed with. (See also Tucker *v.* Wilson, 1 *P. Wms. R.*, 261; Lockwood *v.* Ewer, 2 *Atk. R.*, 303; De Lisle *v.* Priestman, 1 *Brown's Penn. R.*, 176; *Willard's Eq. Jur.*, 457.)

A sale of the pledge was not valid, so as to protect the pledgee, without a previous demand of payment and notice to the pledgor before the sale.

Was the demand and notice as proven in this case sufficient?

It is in proof that the pledgees repeatedly demanded payment of the debt due, by letters which were received by Brown.

On January 18, 1848, a letter was sent to Brown, demanding payment, and giving notice of the sale of the stocks pledged, as stated in notice of sale inclosed, for February 21 next ensuing. This notice only referred to the stocks pledged at the time of the original transaction, and did not include the eight certificates of indebtedness subsequently pledged by Brown, as additional security, in 1846.

So far as relates to the property specified in the notice of sale, I think there can be no doubt as to the sufficiency both of the demand and notice. It was made thirty-four days before the sale, and was sufficiently explicit in the demand, and also in the notice that the property would be sold at the time appointed. No objection is taken to it on these grounds. But it is objected to the sufficiency of this notice, that the time was too short, inasmuch as Brown was at that time in Illinois; and that it ap-

pears by Brown's letter, in answer to the notice, that it was not received by him until February 2. I am not willing to give any such effect to the statement in Brown's letter that the notice came to hand that day.

Presumptively, the notice was sufficient. If the plaintiff relied on the distance of Brown from this city as an objection to the sufficiency of the notice, he should have shown that the time of transmission by mail was such as to deprive Brown of the benefit of the notice. Until that is shown, we have no right to presume that the course of the mail was such as to prevent Brown from attending to the sale of the property pledged. Even if it be taken for granted that the notice was not received until February 2, it would not follow that he had not ample time to have come to New-York after that time, and have attended to the redemption of the property here.

But such notice cannot be made applicable to the eight certificates of $132.50, each of which was not included therein. Brown, from the notice served upon him, had a right to conclude that the defendants' firm (the pledgors) did not intend at that time to sell any thing except the property advertised in the notice. He knew they could not properly sell at auction any of the property of which they had not given previous notice. The subsequent notice in the papers, for three days, of the intended sale of these certificates did not remedy the defect; Brown had no notice thereof, and was not bound thereby, and I see no ground upon which the omission of these certificates in the first notice can be remedied.

It is contended, however, by the plaintiff, that the sale was void, inasmuch as the defendant, Varnum, was the purchaser, he being the special partner in the defendants' firm.

It must be conceded that a purchase by the pledgee—or by one of the pledgees, if there are more than one—does not alter the right of the pledgor; such a purchase does not terminate the bailment, but leaves the purchaser the same responsibility to the pledgor as before the sale. (*Story on Bailm.*, 319.) The general rule was fully laid down by the Chancellor, in Torrey *v.* Bank of Orleans (9 *Paige*, 649, 663), as a rule of universal application to all persons coming within its principle, that no party can be permitted to purchase an interest, where he has a duty to perform that is inconsistent with the character of purchaser.

(See Hawley *v.* Cramer, 4 *Cow.*, 736.) This doctrine was not disputed by the defendants' counsel, but he denied its applicability to the defendant Varnum, claiming that his relation as special partner to the other defendant was such as to deprive him of the character of pledgee and of any right to interfere with the pledge, and of course imposed on him no duty towards the pledgor.

The property was pledged to the defendant's firm. The persons then having a right to act in the management of the affairs of the firm, were the bailees, and they only were charged with the duty of selling, at the highest market price, the securities so pledged.

By the statute authorizing limited partnerships, the special partner is prohibited from transacting any business on account of the partnership, nor can he be employed as agent, attorney, or otherwise, and any interference contrary to these provisions renders him liable as a general partner. (2 *Rev. Stats.*, 175, § 17.)

There was no duty which Varnum could assume to discharge in reference to the indebtedness of Brown to the firm, without making himself liable as a general partner. As the statute prohibited him from acting, and as in fact he never assumed to act as a partner, no duty devolved upon him in reference to the bailment. He could not direct or aid in the sale of the securities. An attempt to interfere with the sale of them would have made him liable. A refusal to do so did not involve him in any neglect of duty. If this be so, and if, during the partnership, the special partner was not one of the persons charged with the duty of controlling and preserving the pledge, the subsequent dissolution of the partnership did not alter his liability; the bailees were the persons originally constituted by the act of the pledgor, and no other could be substituted by the mere fact that the partnership had been dissolved by its own limitation.

The special partner, it is true, may advise as to the interest of the partnership, but so may any one else. Such advice is no act or control of the partnership funds or duties, and does not, in my opinion, alter the position of the defendant Varnum. Although this question is not free from difficulty, I am inclined to think the view I have taken of it to be the correct one.

The remaining question is, what tender is necessary to entitle the plaintiff to bring this action?

The tender made was contained in the letter of January 18, 1854, addressed to the defendant Varnum, stating that the defendant's firm had transferred to him the notes and securities, offering to pay the two notes and demanding the collaterals. If any had been paid off, the demand was varied accordingly.

The like demand was made upon the firm.

If I am right in my previous conclusions as to the validity of the sale of the first security pledged by Brown, then it is evident that no tender could have been made of the balance until that balance had been ascertained, and if any portion of these securities, either principal or interest, had been collected, the like accounting would be necessary. Under either case the offer to pay was sufficient, and as the firm had put it out of their power to comply with their duty, in payment, by selling the certificates of indebtedness, it was not necessary to make any further tender.

In Wilson *v.* Little (4 *Comst.*, 449), Mr. Justice Ruggles says, the sale by the defendant before payment demanded was, therefore, wrongful. The defendants having voluntarily put it out of their power to restore the pledge, a tender of the money borrowed would have been fruitless, and was, therefore, unnecessary. The same rule is stated in Cortelyou *v.* Lansing (2 *Cai. Cas.*, 200).

My conclusions, therefore, are :—

1. That the instrument under which these securities were transferred to the defendant's firm, was a pledge, and not a mortgage ;

2. That on forfeiture for non-payment of the notes, the pledgees were required to demand payment and give notice of the intended sale, before sale of the securities could be made by them, so as to deprive the pledgor of his right to redeem ;

3. That the demand and notice as to all the securities pledged, except the eight securities pledged in 1846, was sufficient ;

4. That no notice was given of the sale of the eight certificates pledged in 1846, and that such sale was invalid against the plaintiff and Brown.

5. That the special partner, Varnum, was not prohibited, by his relation to the firm, from purchasing the securities at the time of the sale by the pledgees.

6. That the offer of Brown to pay the notes was sufficient,

without an actual tender of the money, and that any tender was unnecessary, as the defendant's firm had, by the sale of the securities, rendered such tender fruitless.

It follows, therefore, that the plaintiff is entitled to a judgment directing an account of the moneys received on the securities which were pledged in 1846; and in stating such account, the balance due from the plaintiff on the loan must also be stated. As the complaint avers that such securities have been paid, and the same is not denied in the answer, the only further provision necessary in the judgment would be that the balance remaining unpaid by either party to the other should be recovered, and such order will be reserved until the report of the referee on the accounting is brought in.

Judgment for the plaintiff that the defendant account, and reference ordered to take an account as to the certificates pledged in 1846, and report to this court. Further directions are reserved until the coming in of the report.