By the Court. Bosworth, J.
We do not understand that the plaintiffs claim the right to-have a new trial, on the ground that the facts, specially found by the Judge, before whom this action was tried, are not warranted by the evidence. The practical *480 question presented by the appeal is this: Do the facts, found by the Judge, and admitted by the pleadings, warrant the judgment appealed from?
The check of the 29th of June, 1854, drawn by R. & Gr. L. Schuyler, on the defendants, was presented for payment about one o’clock, p. M., of the day of its date, and payment of it was refused. The refusal was j ustified by the fact, that the drawers had not then sufficient funds in bank to pay it. According to the facts found, the check was next, and again presented to the defendants for payment, on the 1st of July, before eleven o’clock, A. M., and about that hour it was returned to the City Bank, from which it had then come to the defendants, and was returned as not being good.
In the mean time the drawers had failed. The defendants knew of such failure on the 30th of June, and on that day instructed their teller not to pay any checks of the Messrs. Schuyler, which might be presented.
On the 29th of June, about six minutes before three, P. M., a deposit was made with the defendants by the Schuylers, to their credit, of $9,000. This deposit, with the previous balance to their credit, made an amount a little more than sufficient to pay the $10,000 check. Unless these facts created a right in favor of the plaintiffs, to have enough of the deposit applied to pay the check, when it was last presented, and a right of action against the defendants, after such refusal to pay, for the amount of the check, the plaintiffs do not show that they had a cause of action against the defendants at any time, unless one accrued from the subsequent transactions had on the 1st of July, between the plaintiffs, the defendants and the Schuylers.
We shall consider this latter question first. As we read the facts found, the defendants did not represent that payment of the stock notes had been demanded, nor that they were due. In answer to the inquiry, why the check was dishonored ? the defendants’ cashier, replied, “ because the bank had a loan demand on the drawers, which would absorb the whole amount of the credit; of the firm.”
If it would be a material matter, in determining a party, to take a transfer of these stock notes, and the collaterals deposited to secure the payment of the money named in them, that a de *481 mand of the payment of them had, or had not been made, there was no misrepresentation with respect to this point. So, too, if it be conceded, that as matter of law, they would not become due, so as to justify a sale of the stock, until a demand of payment and refusal to pay them, there was no misrepresentation on that point. Whether payment had, or had not been demanded, does not seem to be very important, regarding it merely as an operative inducement to such a transaction as occurred. The Schuylers had failed. This was known to the plaintiffs as well as to the defendants, and payment could have been demanded at any moment, as they resided in this city. The plaintiffs knew that the collateral security held by the defendants was something which the Schuylers had pledged. They undoubtedly supposed the defendants held actual stock, or perfect evidence of a right to it. The defendants as fully believed the same thing. But the defendants did not propose, or accede to any proposition to sell to the plaintiffs any stock, or the stock-notes. When asked “ whether an assignment of the securities would be made, and the check paid, upon the discharging the loan?” the reply made by the officer of the bank was, “that they could do nothing without the consent or order of Messrs. Schuylers.”
The plaintiffs then obtained a written order from the Schuylers, upon the defendants, to deliver to the plaintiffs three hundred and seventy “shares of New Haven Railroad Company" stock, upon their paying our notes, for which said shares are pledged.” By what arrangement between the plaintiffs and the Schuylers this order was given, the case does not disclose. Whether the plaintiffs bought the stock absolutely of the Schuylers for $25,000, or agreed with them to take up the notes, on receiving a transfer of the pledged stock, does not appear. But whatever the agreement between those parties was, it was an agreement relating to the stock pledged by the Schuylers to the defendants; of its terms the defendants knew nothing, except what Schuylers’ order of the first of July imports.
All the defendants wished, or could lawfully claim, was payment of the $25,000 loan. That being paid, they were willing and could be compelled to deliver the notes, and the stock pledged as security for their payment, to any person the Schuylers might designate.
*482 The amount due to the defendants was paid by the plaintiffs by virtue of an arrangement between them and the Schuylers. The defendants did not sell to the plaintiffs the notes or the stock. By the terms of the Schuylers’ order, the defendants were not authorized to deliver the stock to the plaintiffs, except upon the condition of the plaintiffs paying the notes, and on compliance with that condition they were required to deliver it. If the plaintiffs paid the notes, then the defendants were to deliver the stock which the Schuylers had pledged to secure the notes.
The plaintiffs brought this order, and paid the amount due on the two notes, and then the defendants delivered, and were bound, and could have been compelled, to deliver this stock to the plaintiffs. The defendants made all the delivery of which the subject matter was susceptible. They delivered the evidence of a right to the stock, which was all the delivery contemplated, or which, in the nature of things, could be made.
The notes were delivered to the plaintiffs, with a written indorsement on them, to the effect that the defendants had “received payment of Ketchum, Rogers & Bement, and delivered them the securities.”
Under such circumstances, we do not see why the defendants should be required to reimburse the $25,000 to the plaintiffs. If this stock, or evidence of right to it, had never been in possession of the defendants, but had passed directly from the Schuylers to the plaintiffs, upon payment, by the latter, to the defendants, of the $25,000, we think no such claim would be urged. We do not see how the defendants’ liability is varied by the fact that the defendants, pursuant to an order from, the Schuylers, which it was their duty to obey, delivered the stock to the plaintiffs, upon their doing what they had agreed with the Schuylers they would do, as a consideration and condition of such delivery. The plaintiffs and defendants severally acted in good faith. The defendants had a right to retain the stock until the $25,000 was paid, but they had no right to insist upon retaining it after such payment was made. Whether the defendants, on the facts then existing, could have retained the $10,000 on deposit, as against the plaintiffs, we may assume to be a debatable question, but the defendants, clearly, would have no such right after the $25,000 was paid. In our *483 opinion, the conclusions of law, as to this branch of the case, upon the facts found, are:—
1st. The plaintiffs paid for the Schuylers, to the defendants, the amount which the Schuylers owed to the latter.
2d. Such payment was made pursuant to an arrangement between the plaintiffs and the Schuylers, as the principals and sole contracting parties.
3d. The delivery to the plaintiffs, by the defendants, of the securities, called stock, was in consequence of and in obedience to the order of the Schuylers, and by authority of it, and was not in execution of any-contract of the defendants, to sell and deliver to the plaintiffs three hundred and seventy shares of stock.
4th. The defendants were paid no more, as a condition of delivering the stock, than it was his right to demand, before they could have been compelled, by the Schuylers or any other person, to surrender it.
5th. If the plaintiffs paid this money for a consideration which has failed, or by reason of the suppression by the Schuylers of the information that the stock was false and spurious, their only remedy is against the Schuylers, on whose account it was paid.
If these views are sound, the inquiry whether an action could have been maintained by the plaintiffs against the defendants to recover the amount of the check, after it had been presented for payment on the first of July, and the refusal at that time to pay it, becomes unimportant to the proper determination of this appeal. The check has been paid by the defendants; but, unless a discrimination can be made between this case and Chapman v. White (2 Seld. Rep. 412), no right of action arose in favor of the plaintiffs against the defendants by reason of the presentment of the check and the refusal to pay it. The instruments, ordering the parties to whom they were directed, to pay the sums named in them, are in the same form in both cases. Both were drawn on a bank. The drawer, in each case, had moneys to his credit in the bank on which the check or bill was drawn; but in neither case was the deposit a special one. The moneys deposited in each case, from the time of the deposit, were the property of the depositary. Although lost, stolen, or burned, without any fault of the depositary, the latter would continue liable to the depositor for the amount. The right of the depositor was a mere chose in *484 action. We do not see why Chapman v. White is not controlling on this question. If it is, the plaintiffs had no right of action against the defendants for the $10,000 at the time the $25,000 loan was paid, and the securities pledged for the payment were surrendered. Whether, if an assignment had been made by the Schuylers to the plaintiffs, on the first of July, of all claims of the former against the defendants, by reason of the deposits made by the Schuylers with the defendants, and the plaintiffs as such assignees had brought an action to recover the sums deposited, the defendants could have offset the notes, is a question which does not arise. No such assignment was made, and the check itself did not operate as an assignment, or create a lien on the amount standing to the credit of the Schuylers, until the check was accepted or paid.
But it by no means follows, that although no such demand of payment of the stock notes had been made, as would have authorized a sale of the pledged stock, that an action would not have lain, at the suit of the defendants against the Schuylers, upon the notes, nor that, if the Schuylers had sued the defendants on the first of July, to recover the balance standing to their credit, that the stock notes might not have been set-off. Notes payable “ on demand” are due at their date; interest accrues, .and the statute of limitations begins to run from that day. They may be sued without a previous actual demand. It is not apparent why the Bank of Commerce, if the Schuylers had assigned their claim, by reason of their deposits, to the plaintiffs, on the first of July, and the latter had thereupon brought an action against the bank, might not have set-off the stock notes. The Schuylers had failed on the 30th June. The bank knew of it, and on that day sought the Schuylers, and, failing to find them, directed its teller to pay no more checks drawn by the Schuylers. The defendants have done enough to show their purpose, to insist on the right to apply the amount of Schuylers’ credit to satisfy pro tanto these notes. We do not think the Schuylers could have made an assignment of their claim, by reason of their deposits after that date, which would preclude the defendants from setting-off the notes.
But although a note is by its terms due, yet property pledged for its payment cannot be sold until after payment has been actually demanded and a reasonable time to pay has elapsed. If *485 the makers cannot be found, so that a demand of payment can be made of them, a resort to judicial proceedings must be had to authorize a sale. (Stearns v. Marsh, 4 Denio Rep. 227, 230, and 231; Wilson v. Little, 2 Comstock R. 443.)
Upon the facts as found, we think the conclusion of law is, that no such demand had been made as would authorize a sale, on the 1st of July, of the pledged property. If the defendants had sold it that day, the sale would have been unauthorized.
This view strengthens the conclusions before stated, that the transactions, which resulted in payment of the loan and surrender of the stock, were, so far as they related to such payment and surrender, matters as to which the plaintiffs and the Schuylers were the contracting parties.
The defendants having received no more than was their strict right, and having received that as a payment in behalf of their debtor, and being guilty of no fraud, the judgment appealed from should be affirmed, but not for the reasons assigned in support of it by the learned Judge by whom it was rendered.