## JOHN F. SCHEPELER v. HENRY EISNER.

The complaint averred that the plaintiff, a broker, purchased, at the defendant's request, and for his account, ten thousand dollars of gold coin, to pay for which the plaintiff advanced the amount in currency; that, at the same time, the defendant deposited with the plaintiff one thousand dollars as a margin to secure the plaintiff against loss by·any decline in the market value of the coin; that subsequently, the market value having declined, the defendant deposited two other margins of one thousand dollars each; that the market value continuing to decline, by which such margins were more than absorbed, the plaintiff gave the defendant "due notice in writing," that unless he deposited a further margin of five thousand dollars before 12 o'clock noon of the following day, the plaintiff would sell the gold without delay at the market rate, and hold him responsible for the difference; and that the defendant having failed to make good the margin of five thousand dollars within the time specified, the defendant, "*pursuant* to said notice," caused the gold to be sold at the Gold Board, in the city of New York, on the afternoon of the following day, at the best price attainable, and that after deducting the amount obtained for it, together with the broker's commission, and the government tax, there remained, and was due to the plaintiff, a balance or difference, for the amount of which judgment is prayed.

*Held,* 1. That the facts alleged were sufficient to constitute a cause of action for money laid out and expended by the plaintiff for the defendant.

2. By such a transaction, it is necessarily implied that if the defendant should fail to keep the plaintiff secured against loss by maintaining his margin, the latter should have the right to sell the gold for his reimbursement and security; and that in case of such sale, fairly and justly made upon notice, and in such a manner as to obtain the actual market value at the time of sale, the defendant would pay the difference as money laid out and expended at his request and for his use.

3. It will be inferred from the averments of "due notice" of intention to sell, and of the sale "pursuant to the notice," that the sale would be, and actually was made, at the time specified in the notice at the Gold Board. If not sufficiently specific, the defendant's remedy was a motion to have it made more definite and certain, before answer.

4. No allegation of a tender of the gold by plaintiff, or notice to the defendant to redeem was necessary. The gold being held by way of pledge or security, the pledgee might sell upon giving reasonable notice.

5. In the absence of proof to the contrary, a sale of the gold, at the Gold Board, in the city of New York, will be held to have been the best mode of disposing of such an article at its market value.

APPEAL by the defendant from a judgment entered on the verdict of a jury at trial term.

The action was brought to recover a difference under a gold contract.

The complaint alleges that the plaintiff, at defendant's request, bought, for account of defendant, $10,000 American gold coin, and received from the defendant $1,000 currency, as a margin. That such margin was absorbed by the decline of the market value of said gold coin, and on demand, defendant deposited $1,000 currency as a further margin. Gold still declining, and the defendant failing to comply with two several requests for further margin, the plaintiff notified him that unless a further margin was deposited before 12 o'clock noon of the following day, the plaintiff would sell the gold without delay at the market rate, and hold defendant liable for the difference. The defendant failed to deposit a further margin, and the plaintiff sold the gold at the Gold Board. This action was brought to recover the difference between the purchase price of the gold and that for which it sold. The answer alleged, among other things, that the whole transaction was in violation of the acts of Congress, and the statutes of the United States, and was void. Upon the trial, the plaintiff read the pleadings, and proved the interest on the amount claimed and rested. The defendant moved to dismiss the complaint, and for judgment in favor of the defendant on the pleadings, on the grounds set forth in the opinion of the court.

The court denied the motion, and thereupon and without further evidence, on the plaintiff's motion, directed the jury to find a verdict for the plaintiff for the amount claimed.

From the judgment entered on the verdict, the defendant appealed to the General Term.

*Stilwell & Swain*, for the appellant.

*Bowdoin, Larocque & Barlow*, for the respondent.

BY THE COURT.—DALY, F. J.—The answer set up a different contract from the one set out in the complaint. The defendant abandoned this defence, however, neither party giving any evidence upon the trial, the defendant relying solely upon

his motion to dismiss the complaint upon the ground that it did not contain facts sufficient to constitute a cause of action.

The complaint averred substantially, that the plaintiff, at the time stated, purchased, at the defendant's request, and for his account, ten thousand dollars of American gold coin, at the price of 213⅝ dollars of United States' currency for one hundred dollars of the coin, that being the current market rate at the time of the purchase. That the plaintiff advanced the amount, in currency, to make the purchase, together with the broker's commission of one-eighth of one per cent., amounting in the whole to $21,754.50 United States' currency. That the defendant, at the time of the purchase, deposited with the plaintiff one thousand dollars, as a margin to secure the plaintiff against loss by any decline in the market value of the coin. That on a day stated, this margin having been absorbed by a decline in the market value, the plaintiff called for a further margin of $1,000, in currency, which the defendant deposited. That the market value continuing to decline, and the margins deposited having been more than absorbed by such decline, the plaintiff called upon the defendant upon the 15th and upon the 21st of March for further margins, but the defendant failed to comply; whereupon, the plaintiff, upon the 23d of March following, gave the defendant due notice, in writing, that unless he deposited with the plaintiff a further margin of five thousand dollars before twelve o'clock noon of the following day, the plaintiff would sell the gold without delay, at the market rate, and hold him responsible for the difference. That the defendant having failed to make good the margin of $5,000 within the time specified in the notice, the plaintiff, "*pursuant* to said notice," caused the gold to be sold, at the Gold Board, in the city of New York, on the afternoon of the following day, at the best price attainable at the time of the sale, and that after deducting the amount obtained for it, together with the broker's commission, and the government tax, there remained and was due to the plaintiff a balance or difference of $4,753.25, with interest, for the recovery of which the action was brought.

The amount paid for the gold in currency by the plaintiff,

together with the broker's commission, was money laid out and expended by the plaintiff for the defendant, and the acts of the parties, as detailed in the complaint, show very clearly, the nature of the contract between them. It was a loan of money by the plaintiff to enable the defendant to buy a certain amount of gold, which, should it appreciate in value, would enure to the plaintiff's benefit; while, if it should depreciate, he would be subject to loss, involving, in that event, the possibility of risk on the part of the plaintiff, to guard against which he was to keep the gold as security; and to make the security ample, the defendant was to deposit with him a sum of money sufficient to cover, to a certain extent, a decline in the value, and in case of continued decline, a further sum, upon being requested, so that the plaintiff, to prevent the possibility of risk or loss, might always have in his hands a margin:—that is, an amount equal to the difference between the actual value of the gold and the amount he had laid out and expended in purchasing it. It is necessarily implied in such a contract that if the defendant should fail to keep up and maintain the margin, the plaintiff should have the right to sell the gold for his reimbursement and security, and that if he should do so, fairly and justly; that is, upon notice to the defendant, and in such a manner as to obtain the actual market value at the time of the sale, the defendant would pay the difference, as money laid out and expended at his request and for his use. (*Wheeler* v. *Newbould*, 16 N. Y. 392; *Willoughby* v. *Comstock*, 3 Hill, 389; *Allen* v. *Dykers*, *id.* 593; *Stearns* v. *Marsh*, 4 Denio, 227; 2 Kent's Com. 582, 583; 2 Story's Eq. Jurisp. §§ 1008, 1009.)

The grounds upon which the defendant moved for a dismissal of the complaint, were—1. That the contract alleged was illegal, invalid, and without consideration; but as that ground was abandoned upon the argument before the general term, it need not be considered. 2. That the notice was defective and insufficient, as it did not specify any time or place of sale. The averment in the complaint is that the plaintiff gave *due* notice in writing to the defendant, that if he did not make good the margin by noon of the following day, the plaintiff would sell the gold without delay, at the market rate, and that

the plaintiff, *pursuant to the notice,* caused the gold to be sold at the gold board on the afternoon of the following day. It will be intended from this averment, that the defendant was notified that it would be sold immediately after noon of the following day, at the gold board. This is to be inferred from due notice that it would be sold, without delay, at the market rate, and that the plaintiff, pursuant to the notice, caused it to be sold at the gold board. If this general averment was not sufficiently specific, the defendant's remedy was a motion to have it made more definite and certain before he put in his answer. 3. That there was no allegation of any tender of the gold or of of any notice to redeem. No tender was necessary under a contract like this. The gold was held by way of pledge or security, and the pledgee may sell, upon giving reasonable notice to the debtor to redeem. (2 Kent's Com. 582.) "If the debt," says Story, "for which the pledge is given, is not paid at the stipulated time, it is not a forfeiture of the right of property of the debtor therein. It simply clothes the creditor with the authority to sell the pledge and reimburse himself for his debt, interest and expenses ; and this authority to make a sale, may be exercised not only when it is expressly so agreed between the parties, but when the agreement is silent upon the subject." (Story's Eq. Jurisp. §§ 1008, 1009.) " The primary, and, indeed, the only purpose of the pledge," says BROWN, J., in *Wheeler* v. *Newbould* (*supra*), " is to put it in the power of the pledgee to reimburse himself for the money advanced when it becomes due and remains unpaid. The contract carries with it an implication that the security shall be made effectual to discharge the obligation." The notice that the gold would be sold without delay, after noon of the following day, was the equivalent, under a contract like this, of the notice to redeem. The redemption, that is, the prevention of the sale, would have been effected by making good the margin. The defendant was notified that unless he did this, the gold would be sold. It was a commodity, and as a measure of value, liable to fluctuation and change. It had, between the time of the contract, the 4th of July, 1865, and the 23d of March following, depreciated from 213⅝ to 148¼ in currency. The decline in its value had more

than absorbed the margin, which the defendant had deposited. He had been notified on the 15th of March to deposit a further margin, and again on the 21st of March, and failed to comply. A notice, therefore, on the 22d of March, that if he did not comply by noon of the following day, the gold would be sold, was within the rule laid down by Chancellor Kent, "giving reasonable notice to the debtor to redeem," under the circumstances.

The next ground relied upon was, that a sale made at the gold board was not a public sale, and was illegal. The defendant has not pointed out in what respect a sale at the gold board was illegal, and we are not able to discover any grounds that would make it so. The obligation upon the plaintiff was to sell the gold in good faith in such a way that it would bring the actual market value; and in absence of anything before us to the contrary, we must infer that a sale at the gold board was a proper mode, and that so far as we can be presumed to know anything about it, it was the best mode of disposing of such an article, at its market value.

The last point is that the plaintiff was guilty of a conversion in selling the gold at the time and in the manner alleged in the complaint, a point that is sufficiently answered by saying that the plaintiff had a right to sell it for his indemnity and reimbursement, the gold having depreciated below the margin deposited, and the defendant being in default, and that the defendant was as fully and as duly notified of the sale as the law requires. The judgment should be affirmed.

Judgment affirmed.