By the Court.—Sanford, J.
The doctrine is well settled, and has the sanction of reason as.well as authority, that a trustee, charged with the management and disposition of trust property, can never be permitted to become the purchaser thereof. Such purchases are null, ipso jure, and may be avoided by the cestui que trust, at his option, irrespective of the question, whether or not the trustee has made a bargain advantageous to himself, or to the detriment of the beneficiary (Davoue v. Fanning, 2 Johns. Ch. 252; Wormley v. Wormley, 8 Wheat. 441; Hawley v. Cramer, 4 Cow. 717). Nor can a person thus incapacitated by fiduciary relations from purchasing on Ms own account, buy, as the agent, or for the benefit, of a third person (Exp. Bennet, 10 Ves. 381 ; Hawley v. Cramer, ut supra). It would seem to follow that an agent of the trustee, charged, as such, with the execution of the trust, would be disqualified, equally with the trustee himself, from becoming a purchaser on his own account, at a sale conducted by him in the capacity of agent for such trustee. There is, equally in Ms case and in that of his principal, a conflict between duty and interest. As agent for the vendor, he ought to obtain the highest possible price ; as purchaser, it is for his interest to secure the property at the lowest. In his case, as in that of his principal, inclination and obligation are almost certain to be at variance. Emptor emit quam minima, vendor oendit quam máximo potest *270 If the principal cannot purchase, neither should the agent, who is clothed with the authority and charged with the duties devolving upon that principal, be permitted to do so. As against his principal, he could not retain the benefit of his purchase, neither should he do so as against his principal’s cestui que trust. Indeed, I think his principal, at the instance, or in the interest of a cestui que trust, is bound to exercise his right of rescinding. It has even been doubted whether the attorney for an execution creditor can, without the assent of his client, become the purchaser of property sold under execution, notwithstanding that he has no authority to purchase on his client’s behalf (Beardsley v. Root, 11 Johns. 464; Hawley v. Cramer, 4 Cow. 717). As against the judgment debtor, to whom he is under no allegiance, and whose interests he is not bound to protect, and between whom and himself no confidential relation exists, it was said, in Hawley v. Cramer (ut supra), that with the assent of his client, there can be no doubt of the 'right of the attorney to purchase for his own account. But it was there intimated that in cases where the client himself is not permitted to purchase, the like prohibition might with propriety be extended to the attorney or agent. Thus, inasmuch, as assignees in bankruptcy are precluded from becoming purchasers of the bankrupt’s effects, the same rule is applied to the solicitor for the commission, who acts as their agent in ih management of the estate (Exp. James, 8 Vesey, 352). These general principles are substantially conceded by counsel for the respondent. Applying them to the circumstances of this particular case, we find that the defendants, as pledgees of certain shares of stock held by them as collateral security for the payment by defendant of the note in suit, and as such pledgees, charged with a trust in favor of the defendant as respects the sale of such shares, effected such .sale through the intervention uf *271 their president, one Nicholas C. Miller, who, as their agent, made demand of payment, put the matter in the hands of counsel to prepare the proper papers for the sale, delivered the stock certificates to the auctioneers for sale, gave notice to the defendant, attended the sale, and himself became the purchaser in his own name and for his own account.
There can be no question that the plaintiffs could not have purchased the shares on their own behalf, or, that, purchasing, they would still have stood in the relation of pledgees, and would have acquired no better title than that which they already possessed. The shares would still have remained subject to redemption by payment of the debt. Upon the principle and under the authorities above cited and invoked, it is difficult to perceive why any discrimination should, be made in this respect between the plaintiffs themselves, and their president, who acted as their agent in effecting the sale. I think there can be no doubt, that in equity, upon a proper complaint filed in a suit to which the defendants and their president were both made parties, such a sale would be set aside, and redemption allowed, or a re-sale ordered. It is, however, insisted, that even if this be so, the defendant is not entitled to r.^diess in the present suit, because his answer sets up no defense, and is in fact demurrable, as not containing facts sufficient to constitute a counterclaim. I am of opinion that this view of the case is correct. The answer admits the facts constituting the cause of action and merely denies the allegations of the complaint with respect to a sale of the shares, and the amount realized therefrom ; it avers that the defendants purchased the stock through their president, and that its value is two thousand five hundred dollars. If such were the facts, the plaintiffs would not be chargeable by way of set-off or counter-claim with the value of the stock. They would have the right to re *272 cover the full amount due on the note, and upon payment thereof, the defendant would be entitled to his shares. But the right of action on the note is not affectdd by the fact that the plaintiffs hold collateral security for its payment, and the defendant is not entitled to have the value of such securities deducted from the amount recoverable thereon. The creditor, upon non-payment of the note, has an instant right of resort to his personal remedies against the debtor and may collect the full amount by judgment and execution. He is not compelled, in the first instance, to resort to the stock as to a primary fund.
I am constrained to hold that the answer sets up no defense, and is insufficient as a counter-claim, and that the plaintiffs were entitled to judgment thereon. But had they taken judgment thereon it should have been for the full amount due on the note, and the defendant in such case would have been entitled to his collaterals upon payment of such judgment. The proofs, however, establish a defense not set up in the answer. It appeared from the evidence that the defendants have caused or permitted the shares, held by them as collateral to the defendant’s note, to be transferred absolutely and for a good consideration to their president, Nicholas C. Miller, to be held by him in his own right; that the title thereon stands in his name, and that the certificate thereof is in his possession. Their action in so doing was in violation of their duty as pledgees. By thus causing or permitting the stock to be transferred, they put it out of their power to perform their trust. They ceased to be able to surrender the collateral on payment, of the debt. Such transfer constituted a misappropriation or conversion of the pledge, which renders them liable to the defendant for its value. Such liability might have been asserted by way of recoupment or counter-claim in this action (Stearns v. Marsh, 4 Denio, 227). But the answer *273 contains no averment of the facts upon which such liability arises, and a defense, although proven, is unavailing if not pleaded (Field v. The Mayor, &c., of New York, 2 Seld, 179).
The evidence offered by the defendants with respect to the value of the shares, was therefore properly excluded. It was irrelevant and immaterial to any issue before the court. Had the misappropriation or conversion of the stock by the plaintiff's, been averred in the answer, evidence of value would have been pertinent. In the absence of such averment, it was inadmissible.. The defendants not only tail to assert the liability of the plaintiffs, founded on the fact of such transfer and sale, but expressly deny that any sale has ever been made. They cannot both disaffirm the sale and hold the plaintiffs responsible for it.
In assumpsit on the note, under the old system of pleading which existed before the Code, an unauthorized or illegal sale or conversion of the pledge need not have been specially pleaded, but would have been admissible in evidence under the plea of non assumpsit. The defendant could in such case have recouped the full value of the pledge (Stearns v. Marsh, 4 Denio, 227). But if the same rule were now applicable, there is nothing in the defendant’s answer equivalent to the plea of non assumpsit. The plaintiffs’.cause of action is substantially admitted, because in no way denied, and no affirmative defense or sufficient count-.rclaim is set up. On the case made by the pleadings and proofs, I am therefore of opinion that the plaintiffs were entitled to recover, and that as no error appears to have been committed, the judgment should be affirmed, though 1 am far from determining that the defendant is not entitled to relief in some other form of proceeding.
Judgment affirmed, with costs.
Curtis, J., concurred.