only in a case where an offer could have been made but was not made. It does not seem to us that the legislature intended that the plaintiff should be charged with costs for not making an offer which, under the statute, it had no right to make.   The obvious intention is to provide indemnity to the owner who has been subjected to the expense of an investigation, in case of a failure to make the preliminary offer, and thus to give an opportunity to the owner to accept such offer and convey the property, without the institution of the proceeding.    Where, however, there is a legal disability to convey, not only is an offer not provided for by the statute, but it would be an idle ceremony, and of no avail, even if it could be made, and therefore the whole reason for charging plaintiff with costs fails.    It is claimed that the supreme court in this department has allowed costs in one case, and disallowed them in another case, where precisely this condition of things existed.   In neither of these cases, however, was the question fully considered or deliberately passed upon.    We now feel compelled to give the construction to the statute here stated, and to hold that the adult defendants in this case are not entitled to costs.

The order appealed from should be affirmed, with costs.   All concur.

---

(1 App. Div. 294.)

FRANKLIN NAT. BANK OF NEW YORK v. NEWCOMBE et al.

(Supreme Court, Appellate Division, First Department.   February 7, 1896.)

1. COLLATERALS—SALE.

One having collaterals, as security for a note, which, by the terms of his contract, he was, at any time after maturity of the note, at liberty to sell, at private or public sale, with or without notice, cannot be held liable by reason of selling them when the market was in poor condition, they having been sold, two weeks after maturity of the note, at public sale, after notice.

2. SAME—DEMAND.

One holding collaterals as security for a debt due at a certain time, and authorized by his contract to sell on maturity of the debt, need not demand payment before selling.

Appeal from circuit court.

Action by the Franklin National Bank of New York against Isaac B. Newcombe and others.   From a judgment on a verdict directed for plaintiff, defendants appeal.   Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and INGRAHAM, JJ.

P. S. Dean, for appellants.

P. Carpenter, for respondent.

VAN BRUNT, P. J.    This action was brought to recover the balance due upon a promissory note for $20,000, to secure which certain stock and bonds had been pledged as collateral.   The note fell due upon the 15th day of August, 1893, and was not paid.   Certain of the collaterals were sold in the open market, by the consent of the defendants, and the sums realized thereon credited upon the note, and on the 21st of August there remained due upon said note the

balance of $10,155, for the payment of which the plaintiff held certain collaterals. By the terms of the note, upon nonpayment at maturity, the plaintiff had full power and authority to sell, assign, and deliver the whole or any part of the securities at any brokers' board, or at public or private sale, at their option, at any time or times thereafter, without advertisement or notice, and to purchase at such sale or sales, freed and discharged of any equity of redemption. On the 30th of August, 1893, the plaintiff sold certain of these collaterals, at auction, at the Real-Estate Sales Rooms, on Liberty street, after having advertised the same. At this sale the securities brought very low prices, and were bought in by the plaintiff. This action having been brought to recover the balance due upon the note after having credited the amount realized upon the securities, the defendants alleged, as an answer to the plaintiff's claim, that the plaintiff had made the sale above mentioned, wholly disregarding its duty in that behalf, and reckless of the rights of the defendants, and at a time when it was impossible to sell stocks and bonds in open market at anywhere near their actual value; and that said sales were not made with due and proper care, and not in the usual course of business, and at a time when it was impossible to get a fair market value for any stock or bonds, and at a time when no person, in the exercise of due business discretion, would sell his own stock; and that said stock and bonds were bought by plaintiff (except one bond) with scarcely any opposing bidding, at a price far below their actual value. There was no complaint in the defendants' answer that due notice of the time and place of sale had not been given, nor that the sale had not been duly advertised. Upon the trial, evidence was attempted to be offered that the securities sold far below their actual value, and that they were bought in by the plaintiff; and it was argued that this evidence tended to show an intent to injure the defendants, upon the part of the plaintiff, in making the sale. This evidence was excluded, and an exception taken, and upon the termination of the trial a verdict was directed for the plaintiff, and from the judgment entered upon such verdict this appeal is taken.

It is claimed upon the part of the appellants that the exclusion of evidence showing the absence of due care in the sales of collaterals was error; and it is urged, in support of this objection, that the plaintiffs had no right to sell the collaterals, in consequence of the condition of the market; that they must have known that the market would appreciate, and that they were bound to wait until the unusual depression had passed away. It is to be observed that the note for which the collaterals were pledged became due on the 15th of August, and no sale of these securities was made until the 30th of August, showing that the plaintiffs waited over two weeks for the payment of the note before they enforced their rights as against these collaterals. They had a right to sell without notice, and at any time. Instead of making a sale in that way, it appears, by implication at least, that notice was given, and ample time afforded to the defendants to take care of these securities, and they were sold in the only way in which the plaintiffs could have safely sold the

securities, had it not been for the special terms of the contract which they had entered into with the defendants at the time of the receipt of the note in question. Even if the plaintiffs were bound to wait a reasonable time before making the sale, which we by no means admit, there is no evidence of any undue haste, but, on the contrary, it appears that they exercised great deliberation before enforcing their rights, as against the defendants, upon these securities. If they were bound to wait longer than two weeks, they might be required to wait two months; and could they ever tell when they could safely proceed with a sale? This was not the contract between the parties. The action of the plaintiffs was strictly within the terms of the contract, and hence the defendants have no reason for complaint.

It is urged that there was no necessity for selling this loan out at such a time; that it was amply secured, and none of the securities were being unloaded on the market, and that they were in no immediate danger. But, upon such consideration, can a debtor obtain a forced loan from his creditor? Has not his creditor a right to collect when due, and can the debtor compel him to wait because it is inconvenient to pay, and a bad time to realize upon his assets? We are not aware of any such rule.

It is further claimed that the exclusion of evidence which tended to show an intent to injure the defendants was error. It may be observed, in the first place, that no such defense was set up in the answer; and, in the next place, that no evidence was offered tending to show any such intent. The sole evidence offered was that the securities brought very low prices, and that the plaintiffs bought them in. The plaintiffs were pursuing their legal rights, and the defendants, if they had chosen, could have protected the securities, as they knew of the sale. We know of no reason why a creditor may not enforce his legal rights, in a legal way, at any time. There can be no presumption against a creditor who has proceeded with the deliberation and the regularity with which the plaintiffs in this action seem to have acted.

It is further urged that the sale of the securities was illegal, for the reason that no demand of payment was made, and that the right to sell the collaterals did not accrue until after such demand. It is true that, in the case of Lewis v. Graham, 4 Abb. Prac. 106, such a rule was laid down. But it was not necessary to the decision of the case in question; and the rule was not supported by the case cited as an authority, namely, Wilson v. Little, 2 N. Y. 448. The rule, as stated in that case, was that, where no time is expressly fixed by contract between the parties for the payment of a debt secured by a pledge, the pawnee cannot sell the pledge without a previous demand of payment. In the case at bar, there was a time expressly fixed, by contract between the parties, for the payment of the debt, namely, when the note became due; and it will be observed, on a consideration of the cases where the question of demand and notice has been the subject of discussion, that the two terms are used in the same sense, and that they are used where the necessity of notice is the subject of adjudication, and then the phrase "de-

v.37 N.Y.s.no.2—18

mand and notice" is employed. But, in all those cases, the question under discussion was whether the pawnee could sell his pledge without notice; and it was, of course, held that, in the absence of an express contract, he could not do it. In the case of Wilson v. Little, supra, the difference between a debt due upon a certain day, and a debt without fixed date of payment, is borne in mind. In that case, notice had been waived, but demand had not been waived; and the court held that the pawnee could not sell without making a demand, there being no express time when the debt became due. This was undoubtedly a salutary rule. Where a debtor does not know when his money is to be called for, it would be exceedingly unjust that his securities should be sold behind his back, without his being notified that payment of his debt was expected. But this in no way applies to a case where a fixed time is expressly agreed upon, by the parties to a contract, for the payment of a debt, like the case at bar.

It would seem, therefore, that none of the rights of the defendants have been infringed by the action of the plaintiffs, and the judgment appealed from should be affirmed, with costs. All concur.

