Ruggles, J.
 

 delivered the opinion of the court. This was an action for wrongfully selling fifty shares of Erie rail-road stock, which the defendants Little & Co. had received in security for a loan of $2000 made by them to Wilson, through the agency of R. L. Cutting, a broker. The contract in writing was in these words:
 

 “ New-York, Dec. 20, 1845.
 

 $2000. I promise to pay Jacob Little or order two thousand dollars, for value received, with interest at the rate of seven per cent per annum,
 
 having deposited with them as collateral security,
 
 with authority to sell the same at the broker’s board, or at public auction, or at private sale, at option, on the nonperformance of this promise, without notice on fifty Erie.
 

 R. L. Cutting.”
 

 The stock in fact belonged to the plaintiff Wilson, but stood in Cutting’s name on the books of the New York and Erie RailRoad Company. It was of that kind known as
 
 consolidated
 
 capital stock. Cutting negotiated the loan as the plaintiff’s broker. On the same day Cutting made a transfer of the stock on the books of the company in the words following:
 

 “N. Y. & Erie Co.
 

 For value received, I hereby transfer unto Jacob Little & Co. all my right, title and interest in fifty shares of the consolidated capital stock of the New York & Erie RailRoad Company. New-York, Dec. 20th, 1845.
 

 R. L. Cutting.”
 

 It is contended, on the part of the defendants, that the transaction was a 'mortgage and not a pledge ; that the money was
 
 *446
 
 payable immediately, and the stock became absolutely the property of the appellants, and was only redeemable in equity. If this be true, the supreme court and the court for the correction of errors must have rendered their judgments in the case of
 
 Allen
 
 v.
 
 Dykers, (3 Hill,
 
 593,
 
 and
 
 7
 
 id.
 
 498,) upon a mistaken view of the law. In that case, as in the present, there was a loan of money, a promissory note for the payment of the amount, in which it was stated that the borrower had deposited with the lenders, as collateral security, with authority to sell the same on the non-perfórmance of the promise, 250 shares of a stock therein mentioned. The money in that case was payable in sixty days—the sale was to be made at the board of brokers, and notice waived if not paid at maturity. The stock was assigned to the lenders of the money, and the transfer entered on the books of the company, on the day the note was given. With respect to the question whether the stock was mortgaged or pledged, I can perceive no difference between that case and the present. The question does not appear, by the report of that case, to have been raised. It would have been a decisive point, for if it had been a mortgage and not a pledge, the plaintiff must have failed. The sale of the stock in that case, by the lender, before the maturity of the note, did not make it the less decisive. (See
 
 Brown
 
 v.
 
 Bement,
 
 8
 
 John.
 
 98.) If there had been good ground for saying, in
 
 Allen
 
 v.
 
 Dykers,
 
 that the stock was
 
 mortgage,d
 
 and not
 
 pledged,
 
 it is not to be believed that it would have escaped the attention of the eminent counsel who argued the cause, and of both the courts; and on examining the question, I am satisfied that if the point had been taken it would have been overruled.
 

 The argument of the defendant in this case is founded on the assumption that when personal things are pledged for the payment of a debt, the general property and the legal title always remajns in the pledger: and that in all cases where the legal title is transferred to the creditor, the transaction is a mortgage and not a pledge. This, however, is not invariably true. But it is true that possession must uniformly accompany a pledge. The right of the pledgee. cannot otherwise be consummated.
 
 *447
 
 And on this ground it has been doubted whether incorporeal things like debts, money in stocks, &c. which cannot be manually delivered, were the proper subjects of a pledge. It is now held that they are so; and there seems to be no reason why any legal or equitable interest whatever in personal property may not be pledged; provided the interest can be put, by actual delivery or by written transfer, into the hands or within the power of the pledgee, so as to be made available to him for the satisfaction of the debt. Goods at sea may be passed in pledge by a transfer of the muniments of title, as by a written assignment of the bill of lading. This is equivalent to actual possession, because it is a delivery of the means of obtaining possession. And debts and choses in action are capable, by means of a written assignment, of being conveyed in pledge.
 
 (Story on Bail.
 
 §§ 290, 297.) The capital stock of a corporate company is not capable of manual delivery. The scrip or certificate may be delivered, but that of itself does not carry with it the stockholder’s interest in the corporate funds. Nor does it necessarily put that interest under the control of the pledgee. The mode in which the capital stock of a corporation is transferred usually depends on its by-laws. (1
 
 R. S.
 
 600,
 
 § 1.)
 
 It is so in the case of the New-York and Erie Rail-Road Company.
 
 (Laws of
 
 1832,
 
 ch.
 
 224, § 18.) The case does not show what the by-laws of that corporation were. It may be that nothing short of the transfer of the title on the books of the company would have been sufficient to give the defendants the absolute possession of the stock, and to secure them against a transfer to some other person. In such case the transfer of the legal title being necessary to the change of possession, is entirely consistent with the pledge of the goods. Indeed, it is in no case inconsistent with it, if it appears by the terms of the contract that the debtor has a legal right to the restoration of the pledge on payment of the debt at any time, although after it falls due, and before the creditor has exercised the power of sale.
 
 Reeves
 
 v.
 
 Cappen
 
 (5
 
 Bing. N. C.
 
 142,) was a case in which the debtor “made over” to the creditor “as his property” a chronometer, until a
 
 *448
 
 debt of £50 should be repaid. It was held to-be a valid pledge.
 

 In the present case the note for the repayment of the loan and the transfer of the stock were parts of the same transaction, and are to be construed together. The transfer, if regarded by itself, is absolute, but its object and character is qualified and explained by the cotemporaneous paper which declares it to be a deposit of the stock as collateral security for the payment of $2000, and there is nothing in the instrument to work a forfeiture of the right to redeem or otherwise to defeait, except by a lawful sale under the power expressed in the paper.
 

 The general property which the pledger is said usually to
 
 re-'
 
 tain, is nothing more than a legal right to the restoration of the thing pledged on payment of the debt. Upon a fair construction of the note and the transfer taken -together, this right was in the plaintiff, unless' it was defeated by the sale which the defendant made of the stock.
 

 In every contract of pledge there is a right of redemption on the part of the debtor. But in this case that right was illusory and of' no value, if the creditor could instantly, without demand of payment and without notice, sell the thing pledged. We are not required to give the transaction so unreasonable a construction. The borrower agreed that the lender might sell without notice, but not-that he might sell without demand of payment, which is a different thing. The lender might have brought his action immediately, for the bringing an action is one way of demanding payment; but selling without notice is not a demand of payment, and it is well settled that where no time is expressly fixed by contract between the parties for the payment of a debt secured by a pledge, the pawnee cannot sell the pledge without a previous demand of payment, although the debt is technically due, immediately.
 
 (Story on Bail. § 308; Stearns
 
 v.
 
 Marsh,
 
 4
 
 Denio,
 
 227.)
 

 Payment of the note in this case was not demanded until the ■ 3d of January, 1846. Previous to that time, and about the 24th of December, 1845, the defendants had sold the whole or the greater part of the fifty shares of
 
 consolidated
 
 stock pledged to them by the plaintiff, and were therefore not in condition to
 
 *449
 
 fulfil the contract on their part by restoring the pledge. Nor were they able nor did they offer to restore the same kind of stock, or stock of the same value as that which had been pledged in behalf of the plaintiff. On the 3d of January, when the defendants offered to deliver the
 
 converted
 
 stock, which was of a different kind and value, the plaintiff's broker was willing to receive any stock of the same description as that which had been pledged; but no stock of that kind was offered by the defendants. There was at that time a material difference in the market price between the consolidated and the converted stock of the company, the former selling at $85, and the latter at $55, per share. The pledge of the 50 shares of
 
 consolidated
 
 stock, therefore, could not be restored or made good to the plaintiff by assigning to him the same number of shares of
 
 converted
 
 stock. The defendants were bound to restore the identical stock pledged. The sale of it by the defendants before payment demanded was therefore wrongful, and the evidence sustains the third count in the plaintiff’s declaration. The defendants having voluntarily put it out of their power to restore the pledge, a tender of the money borrowed would have been fruitless, and was therefore unnecessary. (3
 
 Hill,
 
 596 ; 7
 
 id.
 
 498.)
 

 The remaining question is as
 
 to the
 
 rule of damages. The stock was disposed of by the defendants as early as the 24th of December, when its market price was about $68 the share. The defendant did not, however, distinctly inform the plaintiff then or afterwards tha.t he had sold it, although he said he “ had not got it,” and gave that as a reason why he did not then transfer it, promising at the same time, that he would make the transfer as soon as the stock came in. The plaintiff, to accommodate the defendant, agreed to wait until the following day, when the transfer was not made, the defendant again promising to make it shortly. The plaintiff’s broker reminded the defendant of the stock frequently, and on the 30th of December, formally notified him that he wanted to pay the loan and get back the stock, insisting that there should be no more delay, and that if it was not returned, he was directed by the party for whom he was acting to buy fifty shares at the board and charge it to the defendants. The defendant then said the stock
 
 *450
 
 should
 
 be
 
 returned the next day, out failed to return it; and it was not until the 2d of January that the defendant ceased to hold out the expectation of restoring the stock, or stock of the same kind and of equivalent value. On that day and on the 3d of January, the consolidated stock sold at $85 the share.
 

 The defendants insist that they are chargeable only with the value of the pledge at the time it was wrongfully converted by them to their own use on or before the 24th of December, and not with its increased value at any subsequent period. The court below in making up the verdict estimated the stock at $84 the share. In actions for the wrongful conversion of personal property, it has in some cases been held that the value of the property is to be estimated according to its price at the time of the conversion, and in others that the plaintiff is entitled to damages according to its value at any time between the time of the conversion and the day of the trial.
 
 (Bank of Buffalo
 
 v.
 
 Kortright,
 
 22
 
 Wend.
 
 348, 366.) It is unnecessary in this case to settle the general rule. The ground on which the defendants insist that the damages must be estimated according to the price of the stock on the 24th of December, is that the plaintiff, on learning that the defendants had sold it, might then have gone into the market and purchased it at the current price on that day. But it is evident that he was prevented from doing so by the repeated promises of the defendants to restore the stock. Although the plaintiff was strictly entitled to a retransfer of the same shares that were pledged, it appears that his broker was willing to receive other stock of the same description and value, which the defendant promised from day to day to give, the plaintiff being all the time ready to pay the money borrowed. Time having thus been given to the defendants at their request for the fulfilment of their obligation, and the plaintiff having waited for the delivery of the stock for the accommodation of the defendants, and having relied on the expectation thus held out, and lost the opportunity of purchasing at a reduced price, it is manifestly just that the plaintiff should recover according to the value of the thing pledged when the defendan finally failed in his promises to restore it.
 

 Judgment affirmed.