## BARBER *vs.* LYON.

B. having agreed to make a wagon for M., the latter gave to L. a written order upon B. for such wagon, which order B. accepted and handed back to L. The . wagon was afterwards delivered to L. by B. upon the order. *Held*, that this was an equitable assignment of the wagon to L., and that B. could not recede from the undertaking, and maintain an action against L. for the price of the wagon.

Where a paper is shown to be in the hands of a party, and he declines to produce it, upon notice, the inferences are to be taken, in connection with the proof of its contents, most strongly against him.

THIS action was commenced before a justice of the peace of the county of Saratoga, to recover the price of a wagon, alleged to have been sold by the plaintiff to the defendant in the year 1853. The trial was by jury, and a verdict was found in favor of the defendant, and the justice rendered a judgment in his favor, for costs. The plaintiff appealed to the county court of Saratoga, and the judge of that county having been the counsel for the defendant certified the appeal to this court. The defense as set up in the answer, was that in February, 1853, one Gad S. Miller was indebted to the defendant, for goods before then sold to him by the defendant, and that he (Miller)

gave to the defendant an order on the plaintiff for a one horse buggy wagon, (the one in question,) which the plaintiff was then making for Miller; that the order was, afterwards and during the same month, accepted by the plaintiff, who agreed to deliver the wagon thereon, and afterwards did deliver it.

On the trial, the plaintiff proved that about the 1st of June, 1853, the parties met, at a turnpike gate, tended by the witness, the plaintiff coming from the north with the wagon in question hitched to the one in which he was riding, and the defendant coming from the south in another wagon. The plaintiff unhitched the hind wagon and drew it out into the road. The defendant then stepped up and handed the plaintiff a paper about two inches wide, and asked him if he would accept of it. The plaintiff, after looking it over, said he would accept of it as far as it went, and said he should not deliver the wagon to the defendant, unless he would be responsible to him for the balance. The defendant replied, that he should do just as he agreed. During this conversation the defendant was hitching his horse to the new wagon, and fixing his harness. The plaintiff forbade the defendant hitching to the wagon, several times, unless he would agree to become responsible for the balance. The defendant hitched to, and finally drove off, saying, as he struck into a pretty fast trot, that he would not be responsible for one mill. The plaintiff hitched the old wagon left by the defendant on to the one in which he was riding, and drove off with them. This part of the evidence was objected to by the plaintiff, but was received by the court. The plaintiff retained the paper, but did not read it aloud. A notice was served upon him to produce it at the trial. But on being called upon, his counsel declined to produce it. Another witness for the plaintiff testified, that a year ago the spring before, the defendant told him that the plaintiff was making him a wagon, and he did not know but it would cost him $130. The defendant got the wagon soon after this conversation. After proving the value of the wagon, the plaintiff rested. The defendant's counsel moved for a nonsuit, on the ground that the plaintiff had not made out a cause of action; and that if any cause of action was proved, it was in

trover and not on contract; and also that the paper should be produced, to show how much the plaintiff was entitled to recover. The court denied the motion, and the defendant proved that, some time before he received the wagon, he met the plaintiff, and inquired of him in relation to the wagon he was making for Miller. They went to the plaintiff's shop and looked at the wagon, and then the defendant produced a written order and showed it to the plaintiff, and told him he could trade with Miller and get the wagon if he, the plaintiff, would accept the order. The plaintiff took the order and looked at it, and said he would accept of it. He said he had no pen and ink in the room, but he would go down and sign it. He went out with the paper, and in a few minutes returned, and gave it back to the defendant, and the witness did not see it after that time. The witness did not read the paper, but the defendant said to the plaintiff, when he handed it to him, that it was an order from Miller, on the plaintiff, for the wagon. The plaintiff said the wagon would cost $125 or $130, and that it would be finished about the first of wagoning.

Another witness for the defendant testified that he saw the plaintiff start with the wagon, from his shop, on the day the defendant received it; and that he returned some time afterwards, without it. On his return he showed the witness a paper or order in writing, which was addressed to the plaintiff, and read, as near as the witness could recollect, as follows: "Let the bearer (or order) have such a wagon as we have talked of (or agreed upon.") It was signed by Gad S. Miller, and under Miller's name was subscribed that of the plaintiff. Some other evidence was introduced, which it is not necessary to detail.

*Hoag & Crane,* for the plaintiff.

*J. B. McKean,* for the defendant.

*By the Court,* C. L. ALLEN, P. J. The testimony in this cause shows conclusively, to my mind, that the plaintiff had agreed to make a wagon for one Miller; that Miller gave to the

Barber v. Lyon.

defendant an order upon the plaintiff for that wagon, which was accepted, and the wagon afterwards delivered upon it. There is some little obscurity about the terms of the order, owing to the difficulty of proving its exact reading, by parol. It was shown to be in the hands of the plaintiff, and he declined to produce it upon notice; and under these circumstances the inferences are to be taken, in connection with the proof, most strongly against him. He could have removed all doubt by its production; and his suppression of it, upon the trial, shows that the evidence, at least, did not exceed its contents. The plaintiff, by accepting the order, induced the defendant to look to him instead of Miller; and had he afterwards refused to deliver the wagon, he would have been liable to an action on the part of the defendant. In *Morton* v. *Naylor*, (1 *Hill*, 583,) it was held that an order not payable in money, and drawn on a particular fund or property, is an equitable assignment of the fund on which it is drawn, and that the drawee, being notified of the assignment, must pay accordingly, though there be no formal acceptance. In that case, where a landlord, for value received, gave an order on his tenant to pay one Warner the rents accruing during a certain time, which the tenant, on the order being presented, promised to do, it was decided that he was bound to do so, notwithstanding the landlord subsequently ordered the tenant not to pay. (*And see* 5 *Paige*, 640.) But the order here was *accepted* in writing, as appears from the testimony. And if any balance remained to be paid upon it by the defendant, (*see* 2 *Hill*, 582,) the plaintiff had it in his power to show that fact, by producing and giving it in evidence. After accepting it, and delivering it back to the hands of the defendant, neither the plaintiff or Miller could have done any thing to change his, the plaintiff's, liability to the defendant. (1 *Hill*, 583. 3 *Paige*, 373.) After the acceptance of the order, the parties met at the turnpike gate, as testified to by one of the witnesses, the plaintiff having the wagon in question, and having evidently started with it from his place of residence for the purpose of delivering it, and the defendant meeting him for the purpose of receiving it. The plaintiff immediately

placed the wagon on the side of the road, as if for delivery, and the defendant handed him a paper, evidently the accepted order, and asked him if he would accept of that. The plaintiff said *he would accept of it as far as it went.* How far did it go? Or what were its contents? In the absence of the order, which the plaintiff refused to produce, and under the testimony, the jury were left to infer that it was an unconditional accepted order for the delivery of the wagon to the defendant, and they found, most probably, in accordance with the facts. At all events their verdict was warranted by the evidence, and cannot be disturbed. There certainly was no evidence on which to support a contract of *sale* and purchase of the wagon; the defendant declaring, as he drove off with the wagon, that he would not be responsible for a single mill.

There was no objection to the evidence that the plaintiff took the wagon left by the defendant in the road. It was proper to prove what was said or done by either party, at the time the parties met, and when the defendant received the wagon.

Whether the proof of what the plaintiff said, at the time he showed the order to the witness, Drake, was proper, it is not necessary to determine. The question was objected to; but it does not seem to have been insisted upon by the plaintiff's counsel, nor decided by the justice.

The judgment of the justice must be affirmed, with costs.

[SARATOGA GENERAL TERM, July 8, 1856. *C. L. Allen, Paige, James* and *Rosekrans,* Justices.]