*647
By the Court:

Fithian, J.
Two questions only arise in this case, and both must depend for solution upon the construction to be given to the contract of pledge before set forth. First, does the authority to “ use, transfer, or hypothecate ” the stock in the contract named, authorize a sale of the stock by the pledgee for his own account before the note matures or becomes due ? If so, can such sale be private, and without notice to the pledgor ?
Formerly, at common law, before a pledge could be sold, the pledgee wa°s required to bring a suit in. equity and obtain authority to sell by judicial proceeding. Subsequently the rule was so far modified that now (in, the absence of any special agreement on the subject) the pledgee may resort to his bill in equity and have a judicial sale, or he may (after the pledgor has made default) sell at public auction without judicial process, having first demanded payment of the debt from the pledgor, and given him reasonable personal notice of the time and place of sale. In case such personal notice could not be given, then resort must be had to a suit in equity (Stearns v. Marsh, 4 Denio, 227).
If the pledgee sell without such demand and .notice, the 'pledgor may have his action to recover the value of the pledge, without tendering the amount of the debt, because by such wrongful sale the pledgee has incapacitated himself from returning the pledge on tender of the debt (2 Caine’s Cases in Error, 204; 10 John. R., 472). This is the extent of the pledgee’s rights and authority in the premises, in the absence of any express contract on the subject. In this case it is conceded the pledgee sold the pledge and applied the proceeds to his own use before the debt became due, and without any demand of, or any notice of sale to the pledgor; and he claims the right thus to do by virtue of the provisions of the contract in evidence. On the trial of the case, the plaintiff’s counsel put in evidence a facsimile of the contract of pledge as it was executed and delivered by the parties, from which it appeared that the promise to pay (or npte), and the agreement as to the pledge, were in one instru *648 ment, which was drawn or prepared for execution by filling up in writing certain blanks and erasing certain printed words, from a printed form previously prepared for use in such cases. The form, as printed, contained an authority to the pledgee to sell at “public or private sale.” The words, “or private ” were erased. So, likewise, the form as printed contained these words, viz., “hereby giving the payee or assignees authority to be the purchasers of the whole or any part of said security, without advertising the same or giving any notioe,” all which were erased before execntion, as were also the words in the body of the note, leaving the contract finally agreed upon between the parties, as hereinbefore set forth. It becomes necessary carefully to analyze this contract, to see if there can be found in it an authority to sell the pledge without demand or notice, and before default made in the payment of the note. First. The contract contains a promise on the part of plaintiff to pay to defendant two thousand five hundred dollars, with interest, at a time to be fixed by defendant, viz., “ one week after demand or notice to plaintiff,” from the defendant, to pay. Second. The contract acknowledges the receipt by defendant, from the plaintiff, of fifty shares of stock as “ collateral security ” for the performance of the promise to pay. Third. The contract then proceeds to specify the power which the pledgee shall have over the pledge, and when that power shall vest and be exercised. And, in that respect, it will be seen that no power or authority whatever is granted over the pledge (unless found in words hereinafter mentioned), except in a certain contingency, viz., “ in case the note shall not be paid ” at maturity, then and only then is the pledgee clothed with authority to sell the pledge “ on the maturity of the note, or at any time thereafter,” at public sale, at the Brokers’ Board, for account of the pledgor, and out of the proceeds to pay the note and net expenses of sale, and if there be a deficiency the pledgor to be liable for it. Thus far the contract is plain and unequivocal. If this were all, there could be no pretence of any authority to sell the pledge, or use or dispose of it in any manner before maturity of the note, or without de *649 mand and notice first made and given. But the contract of pledge contains' another provision. Following the first clause, authorizing a sale after defaudt, and which concededly could only be upon notice to the pledgor, and previous to the provision directing the application of the proceeds of a sale, there is inserted in the body of the contract these words: “And with aurthority to use, transfer, or hypothecate the same, at payeds option, payee being required, on payment or tender, at the proper time, of the amount loaned, and interest, to return an equal quantity of said security, and not the specific stoch deposited?
It will be seen that in this provision there are no express, exclusive words of sale, but only such as are claimed to be equivalent words. Assuming for the present that the words “ to use, transfer, or hypothecate,” are broad enough to include an authority to sell, then when can the sale take place ? It will he seen that in all the clauses of the instrument, when a power of sale is 'expressly and in explicit terms given, the pledgor has been sedulous to protect himself against any sale before the maturity of the note, and any whatever, except such as shall he open and public, and on due personal notice to him. He has stricken the negotiable words from his note even, and deprived the holder of' the power to transfer that as an ordinary negotiable instrument. Are we to conclude, then, that in the next sentence the pledgor, knowingly and intentionally, permitted the insertion of a clause which rendered all these precautions substantially useless, and conferred on the pledgee authority to deal with the pledge in all respects as if it were his own, free and clear from any rights or z interests of the pledgor? Clearly such a construction should not be given to the provision unless the language of the instrument absolutely demands it, which it does not. Again, if the words “ use ” and “ transfer ” be equivalent to a power of sale, in what manner is that power to he exercised? The pledgee claims it gives him the right to sell at once, privately and without any notice to the pledgor, he being- required, in case he so sells, to produce similar stock “ at the proper time? Such *650 a construction is in derogation of the rules of the common law, and contrary to the general scope and spirit of the contract of pledge as a whole, and should not be adopted unless compelled by the explicit and specific words which admit of no other meaning. There are no such words in this provision. There is no explicit or other direction specifying when or in what manner, as it respects notice, the authority to “ use, transfer, or hypothecate” is to be exercised. And I am of opinion that if that “ use or transfer ” take the form of a sale, it can only be exercised in the manner provided by law by a notice to the pledgor.
But is the authority “ to use, transfer,” &c.,. stated in the contract, to be construed as authorizing any “ sale ” of the stock other or different from the one first provided for in the instrument? It is claimed .by defendant’s counsel that the provision of the contract authorizing the pledgee, on payment or tender of the debt at the proper time, to return other similar, and not the specific stock deposited, evidences an intent to permit a sale other and different from the public sale expressly provided for in the first part of the contract, and that such intent should determine the'kind of disposition intended by the words to “ use and transfer.” I am of opinion, however, that in endeavoring to ascertain the specific or particular disposition of this pledge, intended to be authorized by the words “ authority to use, transfer&c., regard must be had as well to the words which were erased from the printed form before execution of the contract, as to those provisions now included in the instrument. By the printed form, as originally prepared, it is clear that the person drafting it intended and did provide for two distinct modes or methods of dealing with pledges to be deposited under such proposed agreements, either mode to be at the option of the pledgee. First. That the pledgee might safely keep the pledge until after a breach of the obligation, for the performance of which it was a security, and then sell the same at public auction, without notice or demand, or at the Brokers’ Board. Second. Or he might, at his option, at any time, sell at private sale, without *651 advertisement or “ any notice,” with authority to himself to become the purchaser. That is to say' he might “ sell, use, transfer, hypothecate,” and in all respects deal with the pledge ess if it was his sole property. How, in this case, it is clear that the pledgor refused to acquiesce in this latter method of dealing with his pledge. He has erased from the form all words authorizing ány “private ” sale, or any sale without full advertisement and notice to him. The court ought not, therefore, to permit a construction to be put upon any general words left in the contract which would have the effect to thwart and subvert this clear and manifest intent of the pledgor. Accordingly, the words “ use and transfer” must be held to mean some “use or transfer” other than an absolute sale. I am confirmed in this view of the case by a consideration of the effect of a construction claimed by the counsel for the pledgee. It is a reasonable presumption that when a creditor requires and a debtor deposits collateral security by way of pledge, it will be something having a market value at least equal to the. amount of the debt. Ordinarily, I believe it is more. In which case, under an agreement, such as claimed by the defendant here, the pledgee may immediately sell the pledge privately and without notice, and reimburse himself for the full amount of his debt, while at the same time he holds his debtor’s note for the full a'mount on interest unsatisfied, and due only at the pledgee’s option. But that is not all, after such sale, if, as in this case, the pledge be stock, and the market value depreciate, the pledgee may buy it in, call for his debt, and collect the full amount, thus making a clear profit of the difference between the depreciated amount at which the stock was purchased and the face of the debt, as well as double interest. If, upon the other hand, the pledge rise in value, after a sale, and the pledgor should tender the amount of the debt and demand an equal quantity of stock, it is, to say the least, questionable whether under the terms of the contract the pledgee would be bound to deliver stock until after the maturity of the note, which occurs only at the option of the pledgee. The *652 pledgee is only bound to deliver stock on “ the payment or tender ” of the full amount of the debt and interest “ at the proper time.” If “ the proper time ” means after default, or at maturity of the note, then it is just such time as suits the pledgee’s convenience. When a pledgee claims such power and authority over his pledge the contract therefor should be clear auT explicit, and nothing be left to interpretation.
The judgment should be reversed, order of reference vacated, and a new trial granted, costs to abide the event.