## KILPATRICK *v.* DEAN *et al.*

*(City Court of New York, General Term. December 24, 1888.)*

**1. APPEAL—REVIEW—OBJECTIONS NOT RAISED BELOW.**
Where an order for the delivery of goods to a third person is assented to by the warehousemen, who, in an action against them by the transferee for the conversion of the goods, require no proof of the consideration or nature of the transfer, they cannot object, on appeal, that no such evidence was given.

**2. SAME.**
Where defendants permitted the transferee, without objection, to testify that the order was a transfer and bill of sale to him, it cannot be objected, on appeal, that such evidence states conclusions, and not facts.

**3. ASSIGNMENT FOR BENEFIT OF CREDITORS—PROOF OF ASSIGNEE'S BOND—REVIEW ON APPEAL.**
The objection that plaintiff, an assignee for the benefit of creditors, did not prove the filing of his official bond, cannot be raised for the first time on appeal.

**4. WAREHOUSEMEN—GUARANTY OF LOAN ON GOODS—SUBROGATION.**
Warehousemen who have guarantied the payment of loans secured by the owner on a pledge of the goods stored, are subrogated, on paying those loans, to the rights of the pledgees.

**5. PLEDGE—SALE BEFORE DEBT DUE—LIABILITY OF PLEDGEE—CONVERSION.**
Pledgees who sell the goods pledged before the debt secured is due, and without notice to the owner, are liable for conversion.

**6. SAME—MEASURE OF DAMAGES.**
The measure of damages in such case is the difference between the market value of the goods at the time of conversion, and the amount of the debt.

**7. SAME—TENDER—WHEN NOT NECESSARY.**
Tender of the debt need not be made in such case before action brought for conversion.

**8. SAME—REPLACING GOODS CONVERTED.**
The owner of coffee converted by a pledgee is not obliged, in order to fix the amount of damages, to purchase an equal amount of similar goods.

9. SAME—ACTION FOR CONVERSION—SET-OFF.

Warehousemen who, after subrogation to the rights of pledgees, convert the goods, cannot set off, in tort for the conversion, debts due from the pledgeor in independent transactions, though the contract of pledge provided that the pledgees might apply the proceeds of sale to all demands against the pledgeor; especially where such warehousemen had assented to a delivery order which specified the advances to which the goods were subject.

10. SAME—PAYMENT OF STORAGE BY THIRD PERSON.

Storage which has been paid by a third person with an understanding that, if it is recovered from the owner, it shall be paid back to him, cannot be set off in such action.

11. SAME—COST OF WEIGHING AND SELLING.

In an action for conversion of certain bags of coffee, the cost of weighing and selling them cannot be set off.

Appeal from trial term.

The plaintiff, Walter F. Kilpatrick, claiming title as general assignee of Peter Haulenbeck, sues the defendants, R. J. Dean & Co., for the conversion of 184 bags of coffee, of the value of $4,000. Haulenbeck acquired title to the coffee under a delivery order signed by Henry A. Morris, the general owner thereof, in these words:                                  "Nov 16, 1886.

"*Messrs. R. J. Dean & Co.*—GENT.: Please deliver to P. Haulenbeck or order the following lot of coffee, he paying advances thereon:

|  |  |  |  | Due. |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
| Oct. 14. | 25 bags | M. & C., | 2,906 lbs., | Feb'y 17, | - | - | - | $ 550 |
|  | 25 " | G C. D., | 3,233 |  |  |  |  |  |
| 16. | 25 " | A. C. H., | 3,105 | " 9, | - | - |  | 850 |
|  | 43 " | Pm., | 7,273 |  |  |  |  |  |
| 19. | 31 " | S. R. C., | 3,739 | Jan'y 22, | - | - | - | 600 |
|  | 35 " | A. G. H., | 4,557 |  |  |  |  |  |
|  |  |  | 24,813 |  |  |  |  | $2,000 |

"H. A. MORRIS."

The sums of $550, $850, and $600 indicate the loans that Messrs. Dean & Co. made to Morris on the coffees. The defendants were warehousemen, and Morris had stored the coffees with them, and received the above advances upon the security thereof. The order to Haulenbeck was intended to transfer the property to Haulenbeck, subject to the advances so made. The advances were made in this way· The defendants issued three negotiable warehouse receipts, covering the coffee in question. After the warehouse receipts had been thus issued, the defendants, at the request of Morris, negotiated three loans for him on the hypothecation of the coffee,—the one with the American Loan & Trust Company of $550, the other with the National Shoe & Leather Bank of New York for $850, and the third with the said American Loan & Trust Company for $600. The usual course in that behalf was followed, viz.: Morris made his three notes, by which he promised to pay to the order of the banks the amounts covered by the notes; and as security therefor, and also as collateral for demands of all kinds by the banks against him, past, present, or future, due or not due, he pledged the coffee in question; that is, he divided up the coffee among the three notes, and he gave power to the banks to sell the coffee on non-payment, and also gave the right to the banks to demand other collaterals in case the coffee depreciated below the estimated value set forth in the notes after service of a demand of one day; and he also gave the right to the banks, (the payees,) in case of sale, to apply the proceeds to the payment of any demands due or not due which the banks had against him, with the right of purchase in the banks, etc. Then, at the request of Morris, the defendants, by indorsement in writing, guarantied payment of each note. Upon the back of each note was an agreement signed by Morris in the following words: "Authority is hereby given to R. J. Dean & Co. to deliver the within note and the guaranty indorsed thereon, together with the collateral

security specified therein, to the payee, (bank,) and to receive the proceeds of the discount of the said note; and for value received the undersigned hereby agrees that if Messrs. R. J. Dean & Co. pay the within note, or it is transferred to them by said payee bank, that said R. J. Dean & Co. shall have all the right, title, and interest of the said payee (bank) in and to the collaterals specified and referred to herein, and said R. J. Dean & Co. may hold such collaterals as security for the payment of any and all demands of said R. J. Dean & Co. against the undersigned, due or not due. H. A. MORRIS." The three notes, representing the loan of $2,000 referred to in the complaint, were thus negotiated by the defendants, and the proceeds paid over to Morris. The three several notes in question are dated, respectively, October 14, 1886, at four months; October 16, 1886, at four months; and October 19, 1886, at three months,—so that the first did not mature until the 22d day of January, 1887. Before maturity of the notes Morris disappeared, whereupon the payees, the banks, called upon the defendants to take up the loans; and thereupon the defendants undertook to realize on the coffee, and, after receiving an offer of 13¾ cents per pound, which they regarded as a fair price, they, on the 14th day of December, 1886, sold the coffee to Thurber, Whyland & Co. at that price, and realized therefor $3,368.89, which they placed to the credit of Morris. No notice of sale was given to any one. On the following day, December 15th, the defendants paid to the banks the amount of each note, respectively, and they became severally transferred to them. It is for the sale of the coffee in this manner, without notice to Morris or Haulenbeck, and before the maturity of the notes or either of them, that the plaintiff predicts his conversion. It is admitted that at the date of the sale neither of the three notes had in fact matured. At the time of the sale of the coffee the defendants, R. J. Dean & Co., claimed to hold, in addition to the three notes in question of $2,000, the following other claims against Morris, to-wit:

(1) Note of said Haulenbeck, dated September 16, 1886, four months, payable to the order of Morris, indorsed by Morris, and discounted by R. J. Dean & Co., at the request of Morris,         -         -         -         -         -         -         - $ 963 11

(2) Note of Henry Butters, dated October 23, 1886, two months, payable to the New York Textile Filter Co., indorsed "N. Y. TEXTILE FILTER Co., per MORRIS,"         -         -         121 26

(3) Note of Malcolm & Flagler, dated October 23, 1886, three months, payable to N. Y. Textile Filter Co., indorsed "HENRY A. MORRIS,"         -         -         -         -         -         100 98

(4) Also a bill for storage, and for weighing and commissions incident to the sale of the coffee in question,         -         -         35 67

(5) Also a bill for storage on other coffee,         -         -         313 27

                                                                    $3,554 29

These together foot up $3,554.29, or some $185.40 more than the amount realized on the sale of the coffee; and these respective amounts the defendants claimed the right to set off against the amount realized for the coffee, upon the theory that they were demands of theirs against Morris, for which he was liable at the time of the alleged conversion, and they claimed that by the terms of the notes, and of the agreement of Morris indorsed on the back of each note, they had a right to offset such demands against the sum which came into their hands as the proceeds of the coffee, or against any sum which the jury might adjudge the value of the coffee to be, assuming that they should fix an amount greater than the amount so realized. The correctness of some of these items was disputed, and it was denied by the plaintiff that any lien existed in respect to any of them. Upon the trial the court refused to hold, as matter of law, that the first three of these five demands were capable of being set off against the damages of the plaintiff awarded by the jury, upon the ground

that the language of the notes and the agreement were not broad enough to entitle the defendants to have them set off; but as defendant Dean swore to the fact that there was a parol independent agreement made with Morris that all coffee in his warehouse at any time should be held for any charges or demands against him, whether the coffee had been taken out and exchanged for other coffee or otherwise, this question was submitted to the jury as one of fact, but upon that issue the jury found for the plaintiff, and the three off-sets were therefore disallowed.   The other two items were disposed of as stated in the opinion.   The jury, on the trial before Mr. Justice BROWNE, awarded the plaintiff the value of the coffee, less the original advances of $2,000 and the interest thereon, with the proper storage charges.   The verdict was for $1,999.45, and from the judgment entered thereon the defendants appeal.

Argued before McADAM, C. J., and EHRLICH, J.

*Blandy & Hatch,* for appellant.   *Kelly & MacRae,* for respondents.

McADAM, C. J., (*after stating the facts as above.*)   The goods being in the possession of the defendants as warehousemen at the time, the delivery of the order by Morris to Haulenbeck was sufficient to transfer the title to him, subject to the advances previously made.   This is its legal effect, both as a "delivery order," (*Searle* v. *Keeves,* 1 Esp. 598; *Proudfoot* v. *Anderson,* 7 U. C. Q. B. 576,) lodged with the warehousemen and assented to by them, (*Bentall* v. *Burn,* 3 Barn. & C. 423; Story, Sales, § 311a; Id. § 340; Hil. Sales, 130, 131; Benj. Sales, 4th Amer. Ed. § 697; 1 Pars. Cont. bottom p. 570,) and as an equitable assignment, (*Bailey* v. *Johnson,* 9 Cow. 114; *Barber* v. *Lyon,* 22 Barb. 622; *Gibson* v. *Lenane,* 94 N. Y. 183; and see *Lenx* v. *Jansen,* 18 How. Pr. 265;) delivery orders being of that class of instruments.   The defendants were promptly notified of the transfer, and apparently assented to it, from which an agreement may be implied to thereafter hold the goods for Haulenbeck, so that he succeeded to the rights which Morris held at the time it was made.   Evidence as to what consideration was paid for the order, or what occurred at the time it was given, does not appear; but Haulenbeck was permitted (without objection) to testify to the effect of the transaction.   It was, he said, a transfer and bill of sale to him.   The objection that the witness gave his conclusions, instead of facts, was not taken, and cannot be raised now.   If the objection had been taken, it might have been obviated by giving the facts, instead of the witness' understanding of them.   The defendants did not require the plaintiff to prove by Haulenbeck what (if any) consideration he paid for the order, or the nature of the understanding upon which he received it, but they contented themselves by objecting to want of title in the plaintiff.   They did not make the point that Haulenbeck had not received title by the order, and consequently had nothing to transfer, nor did they object to want of proof of consideration therefor, and that question cannot be raised for the first time upon appeal.   A party is always bound by the mode he adopts in trying his case, and he cannot assume the existence of a fact, and afterwards, on appeal, complain that it was not proved.   *Jencks* v. *Smith,* 1 N. Y 90; *Chace* v. *Higgins,* 1 Thomp. & C. 229.   In order to show that the order was intended to pass title, the circumstances under and purpose for which Haulenbeck received the order, and the consideration he paid for it, (*Tallman* v. *Hoey,* 89 N. Y. 537,) were proper subjects of proof; for these (if necessary) would have negatived the possible idea that Haulenbeck was to have only a temporary or special control of the goods, in the interest of the person who gave the order, and proved that the absolute title and possession together were to go to him in his own right as owner.   But the courts have gone so far as to hold that, even where there is no proof on the subject, it will be intended that the deliveree is beneficially interested, and not a mere agent of the drawer.   *Bailey* v. *Johnson,* 9 Cow. 114.   It is sufficient, however, to say that proof upon this subject was not required by the defendants in the

court below; for it was not called forth by any objection or request that made the purpose intelligible to the court or to the adverse counsel. Its absence cannot be objected to now. *Jencks* v. *Smith* and *Chace* v. *Higgins, supra.* The rule is well established that an objection which might have been obviated by additional proof at the trial, if taken there, cannot be raised for the first time upon appeal. *Vide* same cases; *Devoe* v. *Brandt,* 58 Barb. 493; *Newton* v. *Harris,* 6 N. Y 345; *Binsse* v. *Wood,* 37 N. Y 526; *Thayer* v. *Marsh,* 75 N. Y. 340. The motion to strike out the oral evidence of Haulenbeck, in respect to the nature and effect of the order, came too late. The evidence was allowed to go in without objection. The defendants took the chances of its being favorable to them, and, finding it unfavorable, could not afterwards move to strike it out. *Quin* v. *Lloyd,* 41 N. Y. 349; *Marks* v. *King,* 64 N. Y. 628; *Pontius* v. *People,* 82 N. Y. 340; *In re Morgan,* 104 N. Y. 74, 9 N. E. Rep. 861. The motion was therefore properly denied. Assuming, then, that Haulenbeck acquired title by the delivery of the order, and the assent thereto of the defendants, it is clear that the plaintiff, by the transfer from Haulenbeck, in turn succeeded to his rights in the premises. The objection that the plaintiff, as assignee for the benefit of creditors, did not prove the filing of his official bond, was not specifically taken at the trial, when the proof might have been supplied, and it cannot, under the cases cited, be taken for the first time at general term.

The defendants, having guarantied the payment of the advances made by the trust company and bank, became subrogated to their rights by paying to them the sums loaned, with the accrued interest. Neither of these institutions had any other claim upon the property pledged, and it was to the extent only of the interest actually transferred by them to the defendants that they succeeded to their rights in respect to the pledged property. How far these institutions would have been protected under the terms of the pledge, if they had made further advances or incurred losses on the credit and faith of the pledge, need not be considered, because they advanced nothing beyond the original $2,000, and incurred no expense in respect to the security given therefor. A contract of pledge is like a contract of suretyship. It bears much the same relation to the original debt. The debt is the basis of the contract; it is the consideration for the pledge, and when the debt is discharged the rights of the pledgee cease. The plaintiff or his assignor could have redeemed the pledged goods by the payment of these advances to the institutions that made them, and upon tender of the amount restitution would have been required. To the extent stated, the defendants succeeded to the rights of the institutions which made the advances. The defendants, after paying the advances to the institutions which made them, and without awaiting the maturity of the notes, or calling for additional security, or giving notice of sale, or observing any of the conditions of the pledge inserted for the pledgeor's protection, sold the coffee, and by their unauthorized sale converted the same to their own use, to the plaintiff's damage. Indeed, the sale which constituted the conversion took place December 14, 1886; and it was not until the following day that the defendants paid the banks, and became subrogated to their rights in respect to the coffee.

If the sale made had been authorized by the terms of the pledge, there would have been no conversion, and the pledgeor's remedy would have been an action for the net proceeds, after payment of the debt and the expenses of the sale; the surplus being regarded as so much money received by the pledgees to and for the use of the pledgeor. But where, as in this case, the pledgees convert the subject of the pledge to their own use, by making an unauthorized sale of it, the transaction operates as a payment of the debt to the extent of the value of the property; and, if the value exceeds the debt, the pledgees are liable in damages for the market value of the property converted, less the amount of the debt, the measure being the difference between the two

amounts; and that is the extent of the recovery had here. No tender by the plaintiff was necessary, as the unauthorized sale was made before the notes became due, and by it the defendants disabled themselves from returning the property. *Wilson* v. *Little,* 2 N. Y. 443. The law never requires a tender when it would be useless and of no avail. *Hayner* v. *Insurance Co..* 69 N. Y. 439; *Lawrence* v. *Miller,* 86 N. Y. 131. Payment and restitution go together. Here there could be no redemption, because the pledgees had disabled themselves from making restitution. The sale made by the defendants, contrary to the terms of the pledge, was in law a conversion of the property by them. *Dykers* v. *Allen,* 7 Hill, 497; *Hardy* v. *Jaudon,* 1 Rob. (N. Y.) 261; *Ogden* v. *Lathrop,* 1 Sweeny, 643; *Wilson* v. *Little,* 2 N. Y. 443; *Lewis* v. *Graham,* 4 Abb. Pr. 106; *Wheeler* v. *Newbould,* 16 N. Y. 392; *Stearns* v. *Marsh,* 4 Denio, 227; *Garlick* v. *James.* 12 Johns. 146; *Nelson* v. *Eaton,* 26 N. Y. 417; *Milliken* v. *Dehon,* 27 N. Y. 375; *Baker* v. *Drake,* 66 N. Y. 522. The jury allowed the market value of the property at the time of the conversion, less the advances and the legitimate storage expenses. The question of reasonable time in applying the measure of damages, as requested by the defendants, is without force, as the trial judge applied a rule more favorable to them by limiting the damages to the time of the conversion. Nor was the plaintiff bound to purchase coffee of like kind to replace that wrongfully converted by the defendants, in order to fix the exact loss. True, that is one way of ascertaining damages against a broker who wrongfully sells stock of a customer, who held it, not for investment, but for speculation. The purchaser may require the broker to replace the stock, and, if he fails to do so within a reasonable time, the customer may replace it at the broker's expense. *Baker* v. *Drake,* 53 N. Y. 211. The rule is a special one, applicable to a peculiar class of cases, and the option which the injured party may adopt does not supersede the elementary rule that, in ordinary cases of conversion like the present, the wrong-doer is liable for the value of the property at the time of conversion. The correct rule was therefore applied in this case. The jury allowed the defendants, from the market value, the advances originally made upon the security of the pledge, with interest, and all allowances they were entitled to claim on the facts found.

The defendants were not entitled to set off (1) the Haulenbeck note of $963.11; (2) the Butters note for $121.26; or (3) the Malcolm & Flagler note for $100.98—*First.* Because, the action being in tort, causes of action arising on contract, and forming no part of the transaction set forth in the complaint as the foundation of the plaintiff's claim, cannot be set off against the wrong complained of. Code, § 501. *Second.* The provision in the original notes to the banking institutions, authorizing them to apply the proceeds of sale to any demands, present or future, due or not due, by proper construction, refers to demands growing out of present or future specific advances upon the coffee, or to subsequent incidental expenditures in reference to it, such as charges for storage, insurance, protest fees, or the necessary expenses of any sale made pursuant to the authority conferred by the terms of the pledge. It does not extend to or contemplate independent demands to be purchased by these institutions, in no way connected with the transactions to which the original notes refer. The provision contained in the written authority given by Morris to the defendants, providing that, in case of payment by them of the notes, they should succeed to the rights of the banks in respect thereto, and might hold the coffee as security "for the payment of any and all demands of said R. J. Dean & Co. against the undersigned, due or not due," is in like manner to be construed as applying to the demands secured by the instruments of pledge, or growing due in consequence of the keeping of the goods, and perhaps for any fresh advance made on the credit and security thereof. It did not apply to, contemplate, or cover independent demands purchased by them afterwards, and in no way connected with the transaction

to which the notes or written authority relate. Still the trial judge sent to the jury the question whether there was any understanding, outside of the papers, for a lien on the goods, in respect to these independent demands, and the jury found against the existence of any such understanding. To hold that the language of the original notes, or of the written authority given to R. J. Dean & Co., contemplated security for any claims or demands they might purchase against the pledgeor, would be to extend the security to an extent limited only by the ability and willingness of the pledgees to purchase outstanding obligations against the pledgeor,—a contingency too remote to have been within the presumed contemplation of the parties. Their minds did not meet as to any such outside financial operation. The whole contract is to be considered in determining any of its parts, and, if its purpose is more clear and certain in some parts than in others, those which are obscure may be illustrated by the light of the others. The $2,000 advanced to Morris on the coffee was divided into three notes, and each of them specified with particularity the coffee pledged for its payment. A provision for additional security was inserted, and all the details thereof provided for, together with the events which were to authorize a sale. There was no running account between the parties, no provision requiring future advances to be made or to be accepted, and the instruments in their entirety look forward to but one transaction, with the possible incidents of growing storage charges, insurance, protest fees, and expenses of sale. This is evidently what the parties intended, and, as intent is the life of the contract, it must be enforced when once ascertained. *Third.* The delivery order given to Haulenbeck, and presented to the defendants, and assented to by them, specifically enumerates the advances made on the coffee as aggregating $2,000, which is another circumstance showing that the parties contemplated a transfer of the coffee, subject only to the payment of these advances, and the charges incidental to them. The parties evidently did not at the time the pledge was made contemplate the purchase of independent outside obligations of the pledgeor, which might possibly increase the lien of the pledgees to an extent which might render redemption of the goods impracticable, if not impossible, and yet such a contingency is justified by the construction the defendants place on the original notes and written authority executed by the pledgeor. The defendants, however, evidently feared that neither the notes to the banks, nor the written authority given by Morris to R. J. Dean & Co., were sufficient, by their terms, to bear the interpretation they sought to have placed upon them, in respect to covering the three notes subsequently discounted by them; for they undertook to supply the necessary authority by proof *aliunde*, but the jury found against them as to the existence of any such authority. The defendants were interested witnesses, and the jury were not bound to accept their theory of the facts in regard to the oral understanding they claim to have had with the pledgeor. *Kavanagh* v. *Wilson*, 70 N. Y. 177; *Manhattan Co.* v. *Phillips*, 109 N. Y. 383, 17 N. E. Rep. 129. The jury, under proper instructions from the court, found against the defendants as to the existence of any special arrangement for a lien outside of the writings; and they consequently disallowed the three notes subsequently discounted by the defendants, and not held by them when the pledge and advances were made.

The item of $313.75 was properly rejected by the court, as that charge had been previously paid by one Fisher, who, on removing certain goods from the defendants, paid the bill, upon some understanding that, if it should be got back from Morris, it was to be returned to Fisher. If the payment was made because Fisher was bound to make it, it discharged the liability forever. If Fisher was under no obligation to discharge the debt, the payment was voluntarily made, and cannot be recovered back by him, or by any one, on his behalf. *Bank* v. *Supervisors*, 106 N. Y. 488, 13 N. E. Rep. 439. The item of $55.67 for additional storage, etc., was allowed to the defendants, deduct-

ing, however, $15.19 included therein for weighing, and $18.40 for selling the bags. These two charges were not authorized by anything that appears in the case, which seems to have been well tried. The verdict is supported by the evidence, and the exceptions are without merit. It follows that the judgment must be affirmed, with costs.

EHRLICH, J., concurs.