(18 Misc. Rep. 180.)

### SHERIDAN v. PRESAS.

(Supreme Court, Appellate Term, First Department. October 29, 1896.)

1. PLEDGES—CONVERSION BY PLEDGEE.
   It is a conversion for a pledgee to change the settings and make an absolute gift of the pledged jewels, and therefore the pledgor is entitled to possession without being required to tender the amount of the debt.

2. SAME—GIFT OF PLEDGE BY PLEDGEE—EFFECT.
   A gift by a pledgee of the pledged chattels does not carry with it an assignment of the debt.

Appeal from First district court.

Action by Alexander P. Sheridan against Salvador Presas, impleaded, etc. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Olcott, Mestre & Gonzalez, for appellant.
Howe & Hummel, for respondent.

McADAM, J.    The action, which is in form for replevin, was originally instituted against the property clerk of the police department of the city of New York, for the possession of two diamond rings and a scarf pin. The property clerk deposited the articles in court, and Salvador Presas and Manuel Plaza were substituted as defendants. The last named did not appear, and the suit was defended by Presas alone. On the trial, Presas made no claim to the pin, but contended and proved that the rings were his property, and that he brought them from Caracas, Venezuela; that, when he came to this country, he pawned one of the rings in a place on Thirty-Eighth street, and the other at Simpson's, on the Bowery; that afterwards he proposed to Plaza that the latter take the rings out of pawn, and keep them until Presas should be able to give him back the money. The sum for which the rings were originally pledged, with pawnbrokers' interest added, was about $250. Plaza took the goods out of pawn; but how much he advanced does not distinctly appear, except from the above circumstance, and from the admission contained in the following paper, which was given to him by Presas:

"For $450, I promise to pay Mr. Manuel Plaza, on the 8th day of July next coming, the sum of $450, which I have received to my satisfaction; and, as guaranty for the performance of this obligation, I deposit in the hands of Mr. Plaza three diamonds owned by me, weighing, more or less, 9½ to 10 carats. It is to be understood that if, on the maturity of this obligation, I shall not be able to repay the sum already hereinbefore expressed, such term shall be extended for two months more on my paying the interest at 2% monthly. It is stipulated between Mr. Plaza and myself that the value of my said diamonds is $800, more or less."

This was signed by Presas. Plaza, on his part, gave Presas the following paper:

"I have received from Mr. Salvador Presas three diamonds, as set forth in the promissory note of this date made by him to me.

"New York, May 8th, 1896."

It was proved that Presas had not liquidated the indebtedness to Plaza, and that no tender was made by him of the amount of the loan. The plaintiff claimed title to the rings as assignee of one Rebecca Israel, to whom, it was contended, Plaza had given the property. The plaintiff maintains that, even if the property was pledged by Presas to Plaza, the latter acquired a special property in the diamonds, and that this right of property passed by gift to Israel, and from Israel to himself by the assignment. While the appellant concedes that this result, under certain circumstances, might have followed in regard to certain kinds of property, such as marketable commodities, or negotiable securities generally, which are easily replaced, he contends that the rule does not apply where the property is gems or valuable works of art and the pledgee makes an absolute disposition of them, in hostility to the title of the pledgor; that such act is the assertion of a dominion over the property by the pledgee, in defiance of the rights of the pledgor, which amounts in law to a conversion; and that trover will lie by the pledgor against the pledgee and his assigns therefor.

It is undoubtedly true that the pledgee acquires merely a limited property in the pledge, the real title remaining in the owner. 2 Kent, Comm. 581; Wheeler v. Newbould, 16 N. Y. 396, 398. The purpose of the pledge is to put it in the power of the pledgee to reimburse himself for the money advanced when it becomes due and remains unpaid. Markham v. Jaudon, 41 N. Y. 241; Mitchell v. Roberts, 17 Fed. 778; 2 Kent, Comm. 577; Story, Bailm. § 286.

The nature of the disposition of the property by Plaza must next be considered in order to determine its legality. It appears that he and Rebecca Israel boarded in the house No. 233 West Fourteenth street, this city; that they first met on Friday, May 1, 1896; that he at once professed love to her, and made her a series of gifts, consisting of a steamer chair, a shawl pin, two Spanish books, Presas' two diamond rings, and a gold band bearing the initials "M. P." In presenting the rings to Miss Israel, Plaza put them on her fingers, and said he hoped she would wear them with good health, to which she replied, "Thanks." The rings were in settings adapted to men's wear. She spoke of this, and Plaza said, "Very well; I will have them reset for you." The next morning they went, by appointment, to Tiffany's, for the purpose of having the settings changed, so as to make them suitable for her. They looked at different settings, and picked out one for $15, $5 being allowed for the old settings. The rings were to be ready on the following Thursday. Miss Israel and Plaza had a "few words" that day, after which he said, "To show you that there's no hard feelings between us, I will bring you home the rings to-morrow night, and give them to you." He brought them home as promised, and put them on her hand. They were then in ladies' settings, and fitted to her fingers. Plaza continued his pro-

testations of love, and wanted her to give up her business as a saleswoman, saying that he would take care of her, and give her all she desired; that he thought a great deal of her; that she was the only person since he came to America that he cared for. He finally proposed that she should live with him, but omitted any reference to the marriage state. Miss Israel declined these propositions, and Plaza became angry, and demanded the rings back, saying they belonged to a woman in Cuba. She refused to return them, and, in consequence, he went to the Second district police court, on May 28, 1896, and made the criminal charge that on the 12th of May, 1896, the said Rebecca Israel feloniously took, stole, and carried away from his possession "two diamond rings, of the value of $500, the property of Salvador Presas, and in the care and custody of deponent." The rings were, by order of the magistrate, placed in the hands of the property clerk, and the criminal proceedings were suspended pending the determination of civil proceedings to be brought to test the title to the property.

The question presented by these facts is whether, taking the story of Miss Israel to be true, as found by the justice, the use made of the property by Plaza was authorized by the nature of the pledge. A pledge has been defined to be "a bailment of goods by a debtor to his creditor, to be kept till the debt is discharged." If the pawn is of such a nature that its due preservation requires some use, such use is permissible, if not indispensable; as if it is a cow or a horse. There the pawnee may milk the cow, and use the milk, or ride the horse, by way of recompense for the keeping. But if the pawn is of such a nature that it will be the worse for use, such, for instance, as the wearing of clothes or jewels, there the use is prohibited. These just principles are founded upon the presumed intention of the parties. Story, Bailm. § 329. Another reason is that, the use not being the object of such a pledge, the pledgee has no implied permission to use it, or, as Story expresses it:

"Unless the contrary is expressly agreed, it may fairly be presumed that the owner * * * would not assent to the jewels being worn as a personal ornament, and thereby exposed to unnecessary and extraordinary perils."

And Chief Justice Cockburn, in Donald v. Suckling, L. R. 1 Q. B., at page 618, said:

"I think it unnecessary to the decision in the present case to determine whether a party with whom an article has been placed as a security for the payment of money has a right to transfer his interest in the thing pledged (subject to the right of redemption in the pawnor) to a third party. I should certainly hesitate to lay down the affirmative of that proposition. Such a right in the pawnee seems quite inconsistent with the undoubted right of the pawnor to have the thing pledged returned to him immediately on the tender of the amount for which the pledge was given. In some instances it may well be inferred from the nature of the thing pledged—as in the case of a valuable work of art—that the pawnor, though perfectly willing that the article should be intrusted to the custody of the pawnee, would not have parted with it on the terms that it should be passed to others, and committed to the custody of strangers."

Jones, in his work on Pledges (section 394), says that jewels held in pawn may be worn if the pawnee takes care not to lose or injure them, the pawnee being liable for any loss, through theft or other-

wise, which might happen in the wearing; for the pawn is so far in the nature of a depositum that it cannot be used but at the peril of the pawnee.

In Tyler on Usury (page 563), the author says that the position of Justice Story, that the pawnee has no right to use jewels pledged, is undoubtedly correct, but adds:

"It may be suggested, perhaps, that if the article pawned was a watch, in running order, that the pledgee would be justified in keeping it wound up and in use; and, possibly, he might carry it about his person, especially if the article was not thereby more exposed to injury or loss than though it was kept in ordinary deposit."

This is placed upon the ground that it is better to use the watch than to allow it to remain run down and idle; hence within the rule where the use is justifiable.

But no decision or text-book writer has gone to the extent of holding that a pledge of jewels or works of art can substantially change the setting of rings, alter a watch, or interfere with a work of art in any material part, without being guilty of an unauthorized use, and making himself liable in consequence for conversion.

The court of appeals, in Lawrence v. Maxwell, 53 N. Y., at page 22, says:

"Ordinarily, and in the absence of any agreement or assent by the pledgor, the pledgee would have no right to use the thing pledged, and a use of it would be illegal. But, under special circumstances, depending somewhat upon the nature of the pledge, and in all cases, with the assent of the pledgor, express or implied, the property pledged may be used by the pledgee in any way consistent with the general ownership and the ultimate rights of the pledgor. An authority to sell the pledge would be inconsistent with the very essence of a bailment by way of pledge, as that recognizes the general property of the bailor, and his right to redeem and have the thing pledged."

Wherever the true intendment of the transaction was to restrain the pledge security to the pledgee personally, that intendment must prevail (Schouler, Bailm. § 218); and to make a transfer as if the pledgee were the absolute owner, is regarded as a breach of trust and a fraud upon the pledgor (Story, Bailm. § 326; Lawson, Bailm. § 57). Or, as stated by another writer, "if a bailee does any act wholly inconsistent with his duty in relation to the goods, as by destroying or selling them, etc., the bailor's right of immediate possession revives, and he may maintain trespass or trover against the bailee himself." Chase, Bl. 518, note, citing Dicey, Parties, pp. 345–380.

The pledgee did not undertake to rehypothecate the goods in recognition of the original pledge; nor did he make a special transfer of his limited interest therein, or deliver possession to another, subject to the rights of the pledgor. He dealt with the property as if it were exclusively his own, by making an absolute gift of the two rings, altering them to suit the fancy of the donee; and all this before any default on the part of the pledgor, not in recognition of, but in hostility to, his title. These acts of themselves constitute a conversion. Cooley, Torts (2d Ed.) 524, 527, 528; 2 Hil. Torts (4th Ed.) 32; 5 Wait, Act. & Def. 179; 4 Am. & Eng. Enc. Law, 108; 7 Lawson, Rights, Rem. & Prac. § 3667; Lamb v. O'Reilly, 13 Misc. Rep. 212, 34 N. Y. Supp. 235; Reynolds v. Shuler, 5 Cow.

323; Vincent v. Conklin, 1 E. D. Smith, 203; Kilpatrick v. Dean (City Ct. N. Y.) 3 N. Y. Supp. 60; affirmed, Id. (Com. Pl.) 4 N. Y. Supp. 708; Moore v. Supply Co., 133 N. Y. 144, 30 N. E. 736; Gregg v. Wittemann, 12 Misc. Rep., at page 92, 32 N. Y. Supp. 1131; Swift v. Moseley, 33 Am. Dec. 197. Even if the pledgee had waited until the pledgor was in default, he could not have extinguished his title except by a sale of the pledge after due notice. See cases collated in 2 Am. & Eng. Enc. Law, 47; Lewis v. Graham, 4 Abb. Prac. 106; Wheeler v. Newbould, supra; Bryan v. Baldwin, 52 N. Y. 232; Wilson v. Little, 2 N. Y. 443; Bowman v. Hoffman (Com. Pl.) 20 N. Y. Supp. 415. Nor could the pledgee under any circumstances obtain any benefit from the unauthorized alterations. 3 Lawson, Rights, Rem. & Prac. § 1319. While an assignment of a debt carries with it all collaterals, even though not expressly named (Parmelee v. Dann, 23 Barb. 461; Craig v. Parkis, 40 N. Y. 181; Barlow v. Myers, 64 N. Y., at page 45), a transfer of collateral does not generally carry the debt (Merritt v. Bartholick, 36 N. Y. 44; Battle v. Coit, 26 N. Y. 404; Wanzer v. Cary, 76 N. Y. 526; Cooper v. Newland, 17 Abb. Prac. 342, 344). Plaza never undertook to pass the debt owing by Presas (Bank v. Baldwin, 43 Hun, at page 140); never mentioned it, but assumed the power of disposition as if no debt existed. Possession of the collateral security alone furnishes no conclusive evidence of the ownership of the debt secured thereby, as it is the mere incident; and non constat the debt may have been transferred to another party, who in that event would be entitled to the possession of the collateral security. Munoz v. Wilson, 111 N. Y., at page 301, 18 N. E. 855.

The plaintiff's assignor paid nothing for the property, never consented to succeed to Plaza's rights as pledgee, but all the way through asserted a general ownership over the property, in defiance of any right or title on the part of Presas to its possession. She clearly became a tort feasor with Plaza. No tender to her was necessary. Plaza, by his acts, voluntarily disabled himself from returning the things pledged, so that a tender to him would have been unavailing. It was therefore unnecessary. Read v. Lambert, 10 Abb. Prac. (N. S.) 428; Wilson v. Little, 2 N. Y. 443; 7 Wait, Act. & Def. 593; Stokes v. Mackay, 147 N. Y. 223, 235, 41 N. E. 496. The law does not require vain and nugatory acts. Clark v. Crandall, 3 Barb. 612; Karker v. Haverly, 50 Barb. 79. Where a pledgee tortiously sells his pledge, or repledges it for a greater sum than the debt for which it is security, the pledgor has an immediate right to bring an action in trover, without tendering the amount of his indebtedness. Waring v. Gaskill (Ga.) 22 S. E. 659; Richardson v. Ashby (Mo. Sup.) 33 S. W. 806. There are cases holding that, to maintain trover, it is not necessary that the right of possession should have existed one moment prior to the conversion, but may be given or spring out of the conversion itself; as where a bailee wrongfully repudiates and terminates the bailment, under an agreement giving him the right to possession or the use of property for a certain time, which contract he has violated by the destruction or sale of the property, or its diversion to some use or purpose not

allowed by the terms of the bailment. Such wrongful act restores to the bailor the right of possession and the right to sustain an action in trover for the conversion. The right of possession in such cases is given by the very act of conversion. 2 Am. & Eng. Enc. Law, 58; Johnston v. Whittemore, 27 Mich. 469; Grant v. King, 14 Vt. 367; Bryant v. Wardell, 2 Exch. 479; Cooper v. Willomatt, 1 C. B. 672; Sanborn v. Colman, 6 N. H. 14; Swift v. Moseley, 10 Vt. 208; Fenn v. Bittleston, 7 Exch. 152.

Under the circumstances, the plaintiff's assignor acquired no right of possession to the two diamond rings as against Presas by reason of the gift; and the debt they were given to secure did not pass to her, but remained in the pledgee. As she was without title, nothing passed by the assignment from her to the plaintiff; and the court below should have awarded possession of the property to Presas, the appellant, and not to the plaintiff.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.